No. 25-50293

## IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

---

FBCC CITYPOINT, L.P.,
*Plaintiff – Appellant*

v.

CITY OF AUSTIN; JOSE ROIG; MATTHEW NORIEGA; JESUS GARZA, in his official capacity as Interim City Manager; DANIEL WORD, in his official capacity as Acting Code Director; GABRIELA GARCIA; BASTA ACTION; GREGORIO CASAR,
*Defendants – Appellees*

---

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
No. 1:22-CV-01272-DAE

---

### BRIEF OF APPELLANT FBCC CITYPOINT, L.P.

---

Kevin J. Terrazas
Eric A. Hudson
Jennifer A. Foster
TERRAZAS PLLC
1001 S. Capital of Texas Hwy.
Bldg. L, Suite 250
Austin, TX 78746
Telephone:  (512) 680-3257

*Counsel for Appellant FBCC CityPoint, L.P.*

No. 25-50293

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

FBCC CITYPOINT, L.P.,
*Plaintiff – Appellant*

v.

CITY OF AUSTIN; JOSE ROIG; MATTHEW NORIEGA; JESUS GARZA, in his official capacity as Interim City Manager; DANIEL WORD, in his official capacity as Acting Code Director; GABRIELA GARCIA; BASTA ACTION; GREGORIO CASAR,
*Defendants – Appellees*

---

### CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this Court may evaluate possible disqualification or recusal.

**APPELLANT:**

Plaintiff-Appellant is FBCC CityPoint, L.P.

**ATTORNEYS FOR APPELLANT:**

Kevin J. Terrazas
Eric A. Hudson
Jennifer A. Foster
TERRAZAS PLLC

ii

1001 S. Capital of Texas Hwy.
Building L, Suite 250
Austin, Texas 78746

**APPELLEES:**

Defendants-Appellees are the City of Austin and Jesus Garza, Daniel
Word, Jose Roig, and Matthew Noriega, each in their Official Capacity.

**ATTORNEYS FOR APPELLEES:**

Paul Matula
Hannah Vahl
CITY OF AUSTIN
P.O. Box 1546
Austin, Texas 78767-1546

/s/ *Kevin J. Terrazas*

Attorney of Record for Appellant
FBCC CityPoint, L.P.

iii

## STATEMENT REGARDING ORAL ARGUMENT

Appellant FBCC CityPoint, L.P. respectfully requests oral argument, which will permit counsel to address the unique factual and intertwined issues of whether or not *res judicata* applies to preclude the important constitutional issues Appellant seeks to have litigated on their merits. Appellant submits that oral argument will significantly aid the Court's decision-making process and the ultimate resolution of this appeal. 5th CIR. R. 28.2.3; *see* FED. R. APP. P. 34(a)(1).

## TABLE OF CONTENTS

Certificate of Interested Persons ................................................................ ii

Statement Regarding Oral Argument.......................................................... iv

Table of Contents..........................................................................................v

Table of Authorities .................................................................................. vii

Jurisdictional Statement ..............................................................................1

Statement of Issues.......................................................................................2

Introduction ..................................................................................................3

Statement of the Case and Relevant Facts...................................................5

    A.    The Repeat Offender Program.................................................5

    B.    FBCC's 2021 placement in the ROP. ......................................7

    C.    FBCC is placed in the ROP and unsuccessfully pursues a constrained intra-City appeal of that determination fraught with hostility and false accusations......................................9

    D.    The aftermath of Mueller Flats' ROP placement. ................11

    E.    FBCC's prior lawsuit against the Building & Standards Commission. ...........................................................................13

    F.    FBCC files the instant suit against the City and its ROP decision-makers, each in their official capacities. ...............14

    G.    The District Court erroneously limits the testimony of one of FBCC's damages expert before dismissing the case on grounds of res judicata. ...................................................................15

Summary of the Argument.......................................................................... 16

Standard of Review .................................................................................... 18

Argument..................................................................................................... 19

I.    THE DISTRICT COURT ERRONEOUSLY DISMISSED FBCC'S CASE ON THE BASIS OF RES JUDICATA. .............................................................. 19

    A.    The Parties to the BSC Suit and the Underlying Suit Were Not the Same. ...................................................................21

    B.    The Issues in This Case Could Not Have Been Litigated in the BSC Suit. ..........................................................24

II.   THE DISTRICT COURT ABUSED ITS DISCRETION IN EXCLUDING TESTIMONY OF DR. THOMPSON. .............................................. 27

III.  THE COURT SHOULD NOT AFFIRM THE DISTRICT COURT'S DISMISSAL ORDER ON ANY OTHER BASIS. ................................................ 29

    A.    Appellees Are Not Entitled to Summary Judgment on FBCC's Procedural Due Process Claims. ..............................31

    B.    Appellees Are Not Entitled to Summary Judgment on FBCC's Substantive Due Process Claims. ..........................33

    C.    Appellees Are Not Entitled to Summary Judgment on FBCC's Takings Claim. ...............................................35

    D.    Appellees Are Not Entitled to Summary Judgment on FBCC's First Amendment Claim. ...................................37

    E.    Appellees Are Not Entitled to Summary Judgment on FBCC's Preemption Claim. .............................................39

Conclusion ............................................................................41

Certificate of Service .............................................................43

Certificate of Compliance .......................................................43

## TABLE OF AUTHORITIES

**Cases**................................................................................... **Page(s)**

*Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644 (Tex. 1996).....................20

*Baker v. City of McKinney, Tex.*, 84 F.4th 378 (5th Cir. 2023)...............35

*Bevis v. City of New Orleans*, 686 F.3d 277 (5th Cir. 2012) ...................31

*Bocanegra v. Vicmar Servs.*, 320 F.3d 581 (5th Cir. 2003).....................19

*Bongo Prods., LLC v. Lawrence*, 603 F. Supp. 3d 584
    (M.D. Tenn. 2022) .........................................................................37, 38

*Book People, Inc. v. Wong*, 91 F.4th 318 (5th Cir. 2024) .......................38

*Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362
    (5th Cir. 1995).................................................................................39

*Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430
    (Tex. 2007) ......................................................................... 20, 25, 26

*City of San Antonio v. Greater San Antonio Builders Ass'n*, 419 S.W.3d
    597 (Tex. App.—San Antonio 2013, pet. denied) ...............................39

*Conroe Creosoting Co. v. Montgomery Cnty.*, 249 F.3d 337 (5th Cir.
    2001)................................................................................................32

*Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852
    S.W.2d 489 (Tex. 1993) ...................................................................39

*Daniels v. Williams*, 474 U.S. 327 (1986) ............................................33

*Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993)..................27

*Davenport v. Garcia*, 834 S.W.2d 4 (Tex. 1992)....................................39

*Dewan v. M-I, LLC*, 858 F.3d 331 (5th Cir. 2017) ...........................19, 20

*Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699 (Tex. 2021).........19

*EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421 (6th Cir. 2019)................................................................................37

*ESI/Emp. Sols., L.P. v. City of Dallas*, 531 F. Supp. 3d 1181 (E.D. Tex. 2021)..................................................................................39

*FM Prop. Op. Co. v. City of Austin*, 93 F.3d 167 (5th Cir. 1996)............33

*Fontenot v. Upjohn Co.*, 780 F.2d 1190 (5th Cir. 1986)........................20

*Gen. Elec. Cap. Bus. Asset Funding Corp. v. S.A.S.E. Mil. Ltd.*, No. 03-cv-189, 2004 U.S. Dist. LEXIS 30714 (W.D. Tex. Oct. 21, 2004).........29

*Gomez v. NTX Auto Group, Inc.*, No. 3:24-cv-28-BN, 2024 U.S. Dist. LEXIS 39980 (N.D. Tex. Mar. 6, 2024) ...............................................1

*Goss v. Lopez*, 419 U.S. 565 (1975)........................................32

*Hammervold v. Blank*, 3 F.4th 803 (5th Cir. 2021)..............................20

*Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036 (5th Cir. 1998).......32

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557 (1995)..................................................................38

*Imperial Trading Co., Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 06-cv-4262, 2009 U.S. Dist. LEXIS 138687 (E.D. La. July 28, 2009) ..........29

*In re Air Crash at Dallas/Ft. Worth Airport*, 861 F.2d 814 (5th Cir. 1988)..................................................................................19

*Jamestown Partners, L.P. v. City of Fort Worth*, 83 S.W.3d 376 (Tex. App.—Fort Worth 2002, pet. denied) .................................................22

*Knick v. Township of Scott, Pa.*, 588 U.S. 180 (2019)...........................35

*Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989) ............................31

*Marrero v. City of Hialeah*, 625 F.2d 499 (5th Cir. 1980) .....................32

*Masonry Building Owners of Or. v. Wheeler*, 394 F. Supp. 3d 1279 (D. Or. 2019) ..................................................................38

*McIntyre v. Ben E. Keith Co.*, 754 Fed. Appx. 262 (5th Cir. 2018)..........18

*McLendon v. U.S.*, 892 F.3d 775 (5th Cir. 2018) ....................................29

*Meza v. Gen. Battery Corp.*, 908 F.2d 1262 (5th Cir. 1990).....................21

*Mikeska v. City of Galveston*, 451 F.3d 376 (5th Cir. 2006) .............33, 34

*Miller v. Reliance Std. Life Ins. Co.*, 999 F.3d 280 (5th Cir. 2021) ........18

*Moore v. Ashland Chem., Inc.*, 151 F.3d 269 (5th Cir. 1998) .................19

*Mowbray v. Cameron Cnty.*, 274 F.3d 269 (5th Cir. 2001) .....................18

*Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018) ........................................................................................38

*Pa. Coal Co. v. Mahon*, 260 U.S. 393 (1922) ...........................................35

*Pac. Gas & Elec. Co. v. Pub. Util. Comm'n of Cal.*, 475 U.S. 1 (1986) ...39

*Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104 (1978) .............36

*PHH Mortg. Corp. v. Old Repub. Nat'l Title Ins. Co.*, 80 F.4th 555 (5th Cir. 2023) ........................................................................................30

*Puga v. RCX Sol'ns., Inc.*, 922 F.3d 285 (5th Cir. 2019)........................28

*Reyes v. N. Tex. Tollway Auth.*, 861 F.3d 558 (5th Cir. 2017)..........33, 34

*Riley v. Nat'l Fed. of Blind of N.C., Inc.*, 487 U.S. 781 (1988)...............38

*San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697 (5th Cir. 1991)..........32

*Simi Inv. Co., Inc. v. Harris Cnty., Tex.*, 236 F.3d 240 (5th Cir. 2000)..33

*State of Tex. v. Thompson*, 70 F.3d 390 (5th Cir. 1995) .........................32

*Swann v. City of Dallas*, 922 F. Supp. 1184 (N.D. Tex. 1996) ...............32

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 301 (2002) .........................................................................35

*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559

(5th Cir. 2005)........................................................................ 18, 21

*U.S. v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.,* 80 F.3d 1074 (5th Cir. 1996)................................29

*Univ. of Tex. Med. Sch. at Houston v. Than,* 901 S.W.2d 926 (Tex. 1995) .....................................................................................32

*Vill. of Euclid v. Amber Realty Co.,* 272 U.S. 365 (1926) .......................33

*Viterbo v. Dow Chem. Co.,* 826 F.2d 420 (5th Cir. 1987).......................29

*Washington v. Assoc. Builders & Contractors of S. Tex. Inc.,* 621 S.W.3d 305 (Tex. App.—San Antonio 2021, no pet.) .........................................40

*Welsh v. Fort Bend Indep. Sch. Dist.,* 860 F.3d 762 (5th Cir. 2017) ......19

*Whallon v. City of Houston,* 462 S.W.3d 146 (Tex. App.—Houston [1st Dist.] 2015, pet. denied)..................................................................22, 25

*Wis. v. Constantineau,* 400 U.S. 433 (1971)..........................................32

*Wooley v. Maynard,* 430 U.S. 705 (1977) ...............................................37

*Zaragoza v. Union Pac. R.R. Co.,* 112 F.4th 313 (5th Cir. 2024) ...........30

**Statutes ................................................................................... Page(s)**

28 U.S.C. § 1291 .........................................................................................1

28 U.S.C. § 1331 .........................................................................................1

28 U.S.C. § 1367 .........................................................................................1

42 U.S.C. § 1983 ..................................................................................1, 35

TEX. GOV'T CODE § 54.039..................................................................14, 24

TEX. LOC. GOV'T CODE § 54.012 ..............................................................22

TEX. LOC. GOV'T CODE § 54.013..............................................................22

TEX. LOC. GOV'T CODE § 54.033 ..............................................................22

x

TEX. LOC. GOV'T CODE § 54.039 .................................................. 20, 24, 25

TEX. PROP. CODE § 92.054 ............................................................... 40, 41

TEX. PROP. CODE § 92.061 ...................................................................... 40

**Other Authorities ................................................................ Page(s)**

AUSTIN MUN. CODE § 4-14-1 ................................................................. 5, 12

AUSTIN MUN. CODE § 4-14-2 ...................................................................... 22

AUSTIN MUN. CODE § 4-14-34 .................................................... 6, 11, 37, 38

AUSTIN MUN. CODE § 4-14-50 ...................................................................... 22

AUSTIN MUN. CODE § 4-14-51 ...................................................................... 22

AUSTIN MUN. CODE § 4-14-52 ...................................................................... 22

AUSTIN MUN. CODE § 4-14-53 ...................................................................... 22

AUSTIN MUN. CODE at § 4-14-33 .................................................................. 41

FED. R. EVID. 702, Adv. Comm. Notes (2000) ........................................... 27

FOX 7, Residents at Mueller Flats Apartments Being Forced Out By
   Management, *available at* www.fox7austin.com/news/resident-at-
   mueller-flats-apartments-being-forced-out-by-management ................ 9

Repeat Offender Signage, *available at*
   https://www.austintexas.gov/department/repeat-offender-
   program#signage ..................................................................................... 11

ROP, *available at* www.austintexas.gov/department/repeat-offender-
   program ..................................................................................................... 5

TEX. ATT'Y GEN. OP. JM-790 at 3739 (1987) .......................................... 40

**Rules ................................................................................... Page(s)**

FED. R. EVID. 702 ...................................................................................... 27

**Constitutional Provisions                                    Page(s)**

xi

Texas Constitution, Article XI, § 5...........................................................40

## JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. More specifically, Appellant FBCC CityPoint, L.P. brought claims for violations of the U.S. Constitution and 42 U.S.C. § 1983, thereby invoking the Court's federal question jurisdiction, and also asserted claims for violations of the Texas constitution that were "so related to the [federal question] claims . . . that they form part of the same case or controversy." 28 U.S.C. § 1367(a); *see also, e.g., Gomez v. NTX Auto Group, Inc.*, No. 3:24-cv-28-BN, 2024 U.S. Dist. LEXIS 39980, at *10-11 (N.D. Tex. Mar. 6, 2024) (defining and applying § 1367 to invoke jurisdiction over supplemental state-law claims). As such, the district court's exercise of jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367 was appropriate, and this Court has jurisdiction over this appeal of the district court's final judgment pursuant to 28 U.S.C. § 1291.

1

## STATEMENT OF ISSUES

1.   Whether the district court erred in dismissing Appellant FBCC CityPoint, L.P. ("FBCC")'s claims pursuant to *res judicata* where the issues and parties in the two cases were not the same and, in fact, FBCC was statutorily prohibited from pursuing the relief it now seeks in any prior judicial proceeding.

2.   Whether the district court abused its discretion in striking, in part, the expert testimony of FBCC's damages expert, John Thompson, where Dr. Thompson based his opinion about lost rental income during the period of FBCC's rental registration suspension not upon improper assumptions, but upon competent evidence from which he drew generally accepted conclusions.

3.   Only to the extent addressed by the Court, whether the City demonstrated an entitlement to judgment on the merits of any of FBCC's claims—an issue the district court did not reach—where the claims are properly pleaded, the City did not demonstrate an entitlement to immunity, and FBCC advanced a genuine material dispute and, for some claims, outright entitlement to judgment as a matter of law, on all claims.

## INTRODUCTION

FBCC owns Mueller Flats—a 394-unit apartment complex—which FBCC has operated since 2014. Until Winter Storm Uri devastated much of Central Texas in February 2021, FBCC managed the complex largely without incident, never receiving notice from the City or anyone else that it was in jeopardy of being placed in the City of Austin's "repeat offender program" ("ROP")—an ordinance-based program that, when invoked, implicates draconian measures, including fines, rental suspensions, and mandatory signage requirements. Directly on the heels of Winter Storm Uri, however, the City of Austin (the "City") placed FBCC on the ROP list, claiming that FBCC's violations prior to Uri led to the placement.[1] Coupled with that registration, FBCC has faced significant community backlash, lost substantial rental income, been unable to sell Mueller Flats for any reasonable amount, and been forced to post signage at Mueller Flats identifying itself as a "repeat offender"—a designation with which it vehemently disagrees and unfairly paints it as a patently bad actor in the Austin community.

After years of discovery, both parties filed summary judgment motions. Rather than reach the merits of either motion, the district court adjudicated the case on a single issue—*res judicata*. Respectfully, the court's *res judicata* finding is erroneous, as this case bears very little

---

[1] There is a dispute among the parties as to whether the City's placement of FBCC on the ROP list was related to Winter Storm Uri.

3

resemblance to the one that either came or could have come before it. While FBCC previously challenged certain orders and fines the Building and Standards Commission ("BSC") imposed in the wake of Winter Storm Uri, that case was statutorily circumscribed to enforcement of the subject orders. That suit, filed against the BSC, did not, and could not, resolve the far weightier issues FBCC raised in this case, including whether the ROP is preempted, whether it is constitutional, and whether FBCC is entitled to damages, declaratory relief, and/or prospective injunctive relief—including a declaration that the ROP itself is unenforceable. Because FBCC's claims should not have been dismissed for *res judicata*, the Court should reverse that order and remand for resolution of the remaining summary judgment issues.

Given the limited scope of the district court's dismissal order, this Court need not resolve the merits of any other issues the parties raised in their respective dispositive briefing. Should the Court choose to undertake that *de novo* review, however, it should resolve those issues in favor of FBCC, deny the City's dispositive motion, and allow this case to proceed to trial. On each of the issues the City presented, it, at best, demonstrated a genuine issue of material fact on claims for which it plainly has no immunity, thus justifying an order to proceed to trial, not the dismissal the City seeks.

Separately, the district court abused its discretion by limiting the testimony of FBCC's damages expert, John Thompson—an economist

4

even Appellees admitted was well-qualified to proffer opinions about damages. While the district court precluded him from opining about FBCC's lost rental income, his opinions are grounded on reliable methodology and established facts, not the unfounded "assumptions" the district court used to exclude him. Because all of Dr. Thompson's opinions—including those the district court excluded—meet the admissibility standards of Rule 702, they should not have been excluded, and the district court erred in concluding otherwise.

## STATEMENT OF THE CASE AND RELEVANT FACTS

### A.    The Repeat Offender Program.

The City of Austin created its Repeat Offender Program in 2013. *See* ROP, *available at* www.austintexas.gov/department/repeat-offender-program (last visited Aug. 26, 2025). According to the City, it enacted the ROP to protect tenant health and safety following a balcony collapse at an Austin-area apartment complex. ROA.2402; *see also, e.g.,* AUSTIN MUN. CODE § 4-14-1. The City claims authority to put a rental property on the ROP if it meets the "2-5-2" criteria, meaning that the property has had any of the following: two or more citations issued within the prior 24 months, five or more Notices of Violation issued within the prior 24 months, or two or more Notices of Violation with which the property has failed to timely comply at any point within the prior 24 months. ROA.2437-38. If a rental property is placed on the ROP, it carries that designation for at least two years; properties that are placed on the ROP

5

a second time remain there for at least five years. ROA.2438. The City's designated 2-5-2 criteria draws no distinction between a large apartment complex with hundreds of units (like FBCC) and a single-family rental property that contains only one unit. ROA.2403-04.

The City decides which properties to designate as "repeat offenders" pursuant to an *ad hoc* internal process that provides no notice to the property owner, let alone a meaningful opportunity to present evidence or argument to contest the ROP designation. ROA.2496-87. A property owner is notified of its placement on the ROP only *after* the City delivers a notice of violation. ROA.2405-13. After the owner is notified of a need to register a rental property, he or she may appeal, but the members of the appeal panel often, as in this case, are comprised of the same individuals who designated the property as a "repeat offender" in the first place. ROA.2413-15. There is no mechanism by which a property owner may appeal an adverse ROP decision to a neutral committee. ROA.2424-30.

Once a property is placed in the ROP, the City exacts a series of punishments on the property owner. Those punishments include things like requiring the property owner to publicly announce its status as a "repeat offender" by placing large, conspicuous signs around its premises. AUSTIN MUN. CODE § 4-14-34 (A); *see also* ROA.2505-07. The City also may suspend a property owners' right to rent and place documents in the public deed records alerting potential buyers of the property's ROP

6

status—actions the City may (and, in this case, did) take without providing notice to the affected owner. *See* ROA.2444-45, 2453-54. Importantly, as the City acknowledges, the ROP ordinances do not actually allow such action. ROA.2508-10.

## B.    FBCC's 2021 placement in the ROP.

FBCC has owned and operated its 396-unit complex, Mueller Flats, since 2014. ROA.2518, 2624. Before February 2021, the City had never done anything to suggest that Mueller Flats would be placed in the ROP, including for any alleged violations the City later used to justify that placement in the hopes of demonstrating that Uri was not the reason for the placement. *See* ROA.1963, 2511, 3547-49.

FBCC's relationship with the City changed when Winter Storm Uri ravaged central Texas in early 2021. During the storm, when temperatures uncharacteristically stayed below freezing for days, the City intentionally cut power to Mueller Flats for nearly a week, making it impossible for FBCC to heat the complex, causing the property's boilers and pipes to freeze, explode, and leak, generating significant water damage and displacement in the process. ROA.2520-21.

Within only two days of the City restoring power at Mueller Flats following Winter Storm Uri, the City served FBCC with several "notices of violation" in which it identified a host of issues that arose only because of the winter storm and the City's intentional decision to cut power. ROA.2440. At that time, Austin (like much of Texas) was in a state of

disaster with repair supplies nowhere to be found and the City's permitting process at a standstill; as such, it was impossible for FBCC to comply with the requirements the City set forth in the notices of violation, let alone on the timetable the City unanimously prescribed. ROA.2419-21, 2530-33.

At the same time the City was issuing notices of violation at Mueller Flats for Uri-related damages, the City issued a more global directive that rental properties should *not* be placed in the ROP because of issues generated by the winter storm. ROA.2498. As applied to FBCC, however, the City expended its quite limited resources to place Mueller Flats in the ROP within mere weeks of the storm pursuant to a so-called "look-back" procedure that the City admittedly did not apply to other properties. ROA.2460-85. But the issues the City touted to find so-called violations—violations the City needed to justify its ROP determination— were years old, already corrected, and never caught in any of the City's prior reviews of Mueller Flats that had occurred over the last several years. ROA.2460-85.

In truth, following Winter Storm Uri, local politicians latched on to the fallout from the storm to target Mueller Flats in the false name of tenant safety. More specifically, both before and after the ROP placement, the City's Code officials and agents at BASTA! worked behind closed doors to create a "tenants' association" to hold frequent meetings and gather negative (and false) information about Mueller Flats.

8

ROA.2429, 2488-97. That effort was spearheaded by U.S. Congressman Greg Casar, then the District 4 council member on Austin's City Council, who was heavily involved in Mueller Flats' placement in the ROP, including through his work with BASTA! to amplify FBCC's negative (and false) portrayal to the City. ROA.3469. In furtherance of that objective, Congressman Casar spent significant time chastising Mueller Flats to anyone who would listen, spilling false statements about the complex and its owners in the process. *See, e.g.,* FOX 7, Residents at Mueller Flats Apartments Being Forced Out By Management, *available at* www.fox7austin.com/news/resident-at-mueller-flats-apartments-being-forced-out-by-management (last visited Aug. 26, 2025) (Casar asserting that Mueller Flats was "[flouting] city rules on health and safety" that could result in the City "[banning] them from renting additional units"). Similarly, Congressman Casar headlined an unauthorized tenant march through the Mueller Flats complex at the very same time City leaders were deliberating the ROP decision and FBCC itself was actively trying to remediate Uri-related damage without help from the City. ROA.2559.

### C. FBCC is placed in the ROP and unsuccessfully pursues a constrained intra-City appeal of that determination fraught with hostility and false accusations.

Although FBCC worked tirelessly to help affected tenants, repair the significant Uri-related damage and contest the Uri-related notices

the City had issued, the City still placed Mueller Flats in the ROP in March 2025. ROA.2538, 3471-79. While FBCC pursued an intra-City appeal of that designation, that appeal proved fruitless. ROA.3300.

Working with Congressman Casar and others, after FBCC notified the City that it would appeal the ROP designation, BASTA! continued to flood the Code Department's decisionmakers charged with adjudicating that appeal with false and misleading information about Mueller Flats. ROA. 2488-97. Importantly, BASTA! is funded by none other than the City itself—the City funnels hundreds of thousands of dollars to Texas Rio Grande Legal Aid each year, which it then uses to fund BASTA!'s efforts, including its effort to place and keep Mueller Flats in the ROP. ROA.2543, 2547-48. In other words, the City contracts with BASTA! to do the very things the City itself claims it cannot do vis-à-vis the ROP. ROA.2549, 2553-54. As with BASTA!, Congressman Casar expressed his own negative views about Mueller Flats in multiple meetings, work sessions, and correspondence with the same City decisionmakers responsible for adjudicating the merits of FBCC's ROP appeal. ROA.2614-16, 2618-19.

As City and BASTA! witnesses testified, when Congressman Casar made demands, the City prioritized those demands and followed his instructions, thereby putting Mueller Flats in a position where it not only found itself in the ROP, but unable to get off of the list. ROA.2253, 3551. Thus, perhaps not surprisingly, after a short May 10, 2021 appeal

10

hearing—a hearing the City held only after BASTA!'s weeks' long campaign to lambast Mueller Flats—the City rejected Mueller Flats' appeal and confirmed Mueller Flats' place in the ROP. ROA.2418.

### D.    The aftermath of Mueller Flats' ROP placement.

Being labeled a "repeat offender" is no small issue; it has had, and continues to have, serious and long-lasting consequences for FBCC and Mueller Flats. As a result of being placed in the ROP, Mueller Flats was required to pay an annual fee, submit to periodic inspections, and display prominent signs across its property declaring itself as a "Repeat Offender." *See* AUSTIN MUN. CODE §§ 4-14-34(A)-(C); ROA.3388, 3400-01, 3403-05 3572-73, 3576-82, 3584-85, 3599-601; *see also* Repeat Offender Signage, *available at* https://www.austintexas.gov/department/repeat-offender-program#signage (last visited Aug. 27, 2025). In accordance with the City's requirements, FBCC has posted this required signage—albeit under protest—for each of the last several years, thereby giving the impression to any tenant, prospective tenant, or visitor that the property owner is a "repeat offender." ROA.3494, 3572-74, 3584-85.

In addition to fines and signage, the Austin Code Department also suspended Mueller Flats' rental registration for a period of months, citing a failure to timely register for ROP and outstanding violations as the basis for that suspension. ROA.952-57. In fact, the City posted a "Notice of Suspension of Rental Right" at Mueller Flats on November 22, 2021, without any prior notice of warning to FBCC, stating that the Code

11

Department was suspending the rental registration for the property. ROA.882-85. The City did not release that suspension or reinstate Mueller Flats' registration until January 10, 2022. ROA.928-29. Still, Mueller Flats remained in the ROP—a fact that remained true despite the City's admission that there really is no valid reason for the property to remain on the list. ROA.922-23. The City also placed filings in Mueller Flats' deed records that continue to identify the property as a "repeat offender." ROA.958-64. Those records and, more generally, Mueller Flats' continued placement in the ROP generated significant barriers for FBCC's ability to sell the property. ROA.1028-31.

While the City contends that it is possible for a property to get off the ROP list, once placed, it is abundantly clear, as related to Mueller Flats, that the City's requirements to be released could never be fulfilled. For example, on the two-year anniversary of Mueller Flats' ROP placement, the City was supposed to conduct a re-review to see if the property still met the 2-5-2 criteria; the City, however, could not say whether that re-review was ever done and, even worse, conceded the possibility that Mueller Flats should have been taken off the list by March 2023, at the latest. ROA.3380-82, 3394-95. That, of course, did not happen. ROA.2625. Additionally, while the ROP is intended to protect tenant health and safety, AUSTIN MUN. CODE §4-14-1, the City has confirmed that it will not remove Mueller Flats from the ROP until FBCC clears itself of every violation the City lodges—whether justified

12

or related to health and safety—for the entirety of a 2-year period, including *de minimum* violations that are entirely beyond Mueller Flats' control. ROA.3383-85, 3522-26. And, even if Mueller Flats is removed from the ROP, the "repeat offender" designation remains in the property's chain of title, advising potential buyers that the property carries that designation. ROA.3403-06.

### E.    FBCC's prior lawsuit against the Building & Standards Commission.

While it bears no resemblance to the claims and issues FBCC seeks to litigate in this suit against the City and its key ROP decision-making officials, FBCC filed a prior administrative suit in the District Court of Travis County, Texas against the BSC in which it sought only to overturn several notices of violation the BSC issued to Mueller Flats in the aftermath of Winter Storm Uri—violations that, according to the City, could *not* have been the basis of the ROP decision. *See* ROA.2264-87. For several reasons, including that the BSC is not involved in the determination that a property will be placed on the ROP list, the ROP issue could never be raised. Importantly, during the course of the instant lawsuit, the City repeatedly acknowledged the difference in the relief at issue in the BSC suit as compared to this one. *See, e.g.,* ROA.1139, 1536-37, 1955-56 (acknowledging, even in the summary judgment motion where the *res judicata* argument was raised, that the BSC suit and the instant suit raised different claims against different parties and sought

different relief), 3637. Yet, this is the suit upon which the district court relied to find the instant suit was barred by *res judicata*. ROA.4148-62.

### F.    FBCC files the instant suit against the City and its ROP decision-makers, each in their official capacities.

Although FBCC's successful suit against the BSC declared certain notices of violation invalid, that suit did not address FBCC's placement on the ROP list or resolve any of the constitutional violations FBCC had experienced to-date as a result of the Code Department's use of that program as applied to Mueller Flats. Thus, uninhibited by the statutory limitations at issue in the BSC suit—limitations designed to focus the court's review only on the legality (or lack thereof) of the specific violations before it, *see* TEX. GOV'T CODE § 54.039—FBCC filed the instant suit seeking different relief. ROA.140-57. Among other things, FBCC seeks: (1) monetary relief and financial restitution to compensate the losses it experienced as a result of decreased rentals and an inability to sell Mueller Flats at the height of the market as a direct result of the ROP; (2) a declaration that the ROP is preempted, unconstitutional, both facially and as-applied to Mueller Flats, and unenforceable; and (3) prospective relief ensuring that the City takes FBCC out of the ROP. *Id.*

After FBCC filed these claims, the parties engaged in substantial discovery, including expert discovery pursuant to which FBCC detailed the specific damages it sought, including damages for lost rental income,

ROP fines and fees, and Mueller Flats' diminution in value as a result of its ROP placement. *See* ROA.683-84, 709-10, 724-93, 811-31. Combined, these damages amount to more than $16 million—damages that FBCC was statutorily barred from pursuing in the prior administrative suit against the BSC, which was cabined only to a determination of whether the specific notices of violation in that suit were valid. ROA.710, 2264-87. In addition, FBCC made clear its intent to seek a declaration that the ROP (not any individual notice of violation) is unenforceable, preempted, and unconstitutional and that, as applied to Mueller Flats, the City failed to afford FBCC proper procedural or substantive process, thus justifying prospective relief disallowing enforcement of the ROP on a forward-looking basis. *See, e.g.,* ROA.1936.

## G. The District Court erroneously limits the testimony of one of FBCC's damages expert before dismissing the case on grounds of *res judicata*.

Nearly two years into the case, the parties filed cross-motions for summary judgment, ROA.2383-99, 2655-90, and Appellees successfully moved for leave to strike certain testimony of FBCC's damages expert, Dr. Thompson, ROA.3636-41, 3753-64. As to Dr. Thompson, Appellees sought to strike his testimony related to FBCC's lost rental income during the two-month period of rental suspension the City ordered in November 2021 and other testimony related to FBCC's damages between March 2021 and the present. ROA.3753-64. The district court granted

15

that motion, in part, finding that Dr. Thompson could not testify about FBCC's lost rental income because it allegedly was based on an erroneous assumption about the rents FBCC received during the period of the suspension. ROA.4142-46. Appellees' motion to strike opinions related to the rest of Dr. Thompson's damages model was denied.

As to the dispositive motions, FBCC sought summary judgment on two affirmative claims: that the ROP is preempted and that it violates the First Amendment. ROA.3636-41. Appellees, in turn, sought summary judgment on all claims, asserting that *res judicata* barred the suit as a whole and that, regardless, FBCC had not mounted any cognizable claim on the merits. ROA.2655-90. Adjudicating these motions, the district court reached a single issue only: *res judicata.* ROA.4148-62. Given the district court's conclusion that the BSC suit precluded FBCC's right to pursue claims in this suit, ROA.4162, it did not reach the merits of any other issues the parties presented. Following that order, FBCC timely filed its notice of appeal. ROA.4188.

## SUMMARY OF THE ARGUMENT

The district court erred by dismissing FBCC's claims on the basis of a *res judicata* determination that, respectfully, has no application in this case. As the district court noted, *res judicata* only precludes a party from relitigating issues that were or could have been raised in a prior action against the same party in the prior action. COA.4154. This is not such a case. The BSC case that FBCC brought to have certain notices of

16

violation declared invalid—notices that the City asserted on summary judgment were not the same as those at issue in this case—is not this case, wherein FBCC seeks to have the ROP ordinances declared unconstitutional and unenforceable. Notably, in the BSC case, FBCC was statutorily constrained to the specific administrative process afforded by Chapter 54 of the Texas Government Code, which did not allow for the types of claims FBCC has pursued in this case. Lacking proof that these claims were or could have been litigated in the prior dispute against the BSC (not the Code Department, as is the case here), the district court's *res judicata* analysis is unfounded and should be vacated.

The district court also abused its discretion in granting, in part, the City's motion to exclude certain testimony of FBCC's damages expert, John Thompson, PhD. Contrary to the City's argument and the district court's holding, Dr. Thompson did not rest his opinions about FBCC's lost rental income on an erroneous or unfounded assumption. Rather, his report makes clear, with respect to that targeted opinion about the rental income FBCC lost as a result of the suspension of its rental registration between November 2021 and January 2022, that he accounted for the rent FBCC did receive, which did not feature in his analysis. The City raised no objection to his qualifications and, having grounded his lost rental income opinion on a reliable methodology and the type of materials

17

experts in this field commonly use, his opinion should not have been excluded.

Finally, while this Court need do nothing more than vacate and remand with instructions to the district court to adjudicate the parties' summary judgment motions on their merits, should this Court decide to adjudicate those issues, none warrants an order affirming dismissal. On each cause of action for which the City sought judgment as a matter of law, it has done nothing more than demonstrate a genuine issue of material fact warranting a trial on the merits. As such, even if the Court reaches the merits, the Court should order denial of the district court's summary judgment order.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal based on *res judicata*. *See McIntyre v. Ben E. Keith Co.*, 754 Fed. Appx. 262, 263 (5th Cir. 2018) (citing *Mowbray v. Cameron Cnty.*, 274 F.3d 269, 281 (5th Cir. 2001)); *see also Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005) ("The *res judicata* effect of a prior judgment is a question of law that this court reviewed *de novo*."). The same is true of this Court's review—should it decide to undertake it, rather than simply remanding—of the other summary judgment arguments both parties advanced. *See Miller v. Reliance Std. Life Ins. Co.*, 999 F.3d 280, 282-83 (5th Cir. 2021). In undertaking the requisite *de novo* review, the Court must "draw the inferences most favorable to the party opposing the

18

motion." *In re Air Crash at Dallas/Ft. Worth Airport*, 861 F.2d 814, 816 (5th Cir. 1988); *Dewan v. M-I, LLC*, 858 F.3d 331, 334 (5th Cir. 2017). By comparison, with respect to FBCC's challenge to the district court's order excluding, in part, the testimony of Dr. Thompson, the Court reviews for an abuse of discretion. *See Bocanegra v. Vicmar Servs.*, 320 F.3d 581, 585 (5th Cir. 2003) (citing *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 274 (5th Cir. 1998)).

ARGUMENT

### I.    THE DISTRICT COURT ERRONEOUSLY DISMISSED FBCC'S CASE ON THE BASIS OF *RES JUDICATA*.

From the face of the district court's order, the court clearly adjudicated the parties' cross-motions for summary judgment only on the doctrine of *res judicata*, finding that the defense "bars FBCC's current lawsuit." ROA.4162. Respectfully, the district court erred in reaching that conclusion, as FBCC's instant claims were not and could not have been raised in its suit against the BSC—a different party—and, according to the City, involving different violations at issue.

As the parties seeking to invoke *res judicata* to preclude FBCC's claim's, Appellees bore the burden of proving its application. *See Welsh v. Fort Bend Indep. Sch. Dist.*, 860 F.3d 762, 764 (5th Cir. 2017); *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 706 (Tex. 2021). Thus, Appellees bore the burden of establishing each of: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity

19

of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Hammervold v. Blank*, 3 F.4th 803, 809 (5th Cir. 2021) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)); *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). Appellees failed that burden, as the arguments and evidence they presented certainly failed to "establish beyond peradventure all of the essential elements of the . . . defense to warrant judgment in [their] favor." *Dewan*, 858 F.3d at 334 (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1994 (5th Cir. 1986)).

Appellees established a single requisite element: that FBCC secured a final judgment in an earlier case. That is largely irrelevant, however, as that final judgment was obtained in a case involving different notices of violations, different claims, and even different parties. *Compare* ROA.2265-87 (BSC petition), *with* ROA.140-57 (complaint in this case). Moreover, given the strictures of the statute under which FBCC was required to sue the BSC to contest the notices of violation at issue in that suit, FBCC did not, and could not, contest the legality, enforceability, or constitutionality of the ROP—the focus of the instant dispute. *See* TEX. LOC. GOV'T CODE § 54.039. For any or all of these reasons, the suits were not the same, nor could they have been, and the district court's *res judicata* analysis is erroneous.

20

### A.    The Parties to the BSC Suit and the Underlying Suit Were Not the Same.

While the district court concluded that the only dispute was about whether FBCC's claims were or could have been brought in the BSC suit, that assessment is not correct. ROA.4156. While it was undisputed that FBCC and the BSC were the parties in the prior BSC suit, *id.*, it was not undisputed that the BSC and the Appellees in this case—the City of Austin and four Code Department officials, Jesus Garza, Daniel Word, Jose Roig, and Matthew Noriega—are the same parties against whom FBCC sought relief.

For *res judicata* to apply, the parties in the two suits under consideration must be identical or in privity with one another. *See Test Masters*, 428 F.3d at 571. Where the parties are not identical, this Court has recognized privity in only three "narrowly-defined" situations where non-parties to the prior suit are "sufficiently close" such that they have privity with the parties in the instant suit: "(1) where the non-party is a successor in interest to a party's interest in property; (2) where the non-party controlled the prior litigation; and (3) where the non-party's interests were adequately represented by a party to the original suit." *Meza v. Gen. Battery Corp.*, 908 F.2d 1262, 1266 (5th Cir. 1990). Here, the BSC and the Appellees fit none of these parameters—a reality perhaps best highlighted by the BSC's exclusive authority to adjudicate the legality of notices of violation that featured in FBCC's first suit

21

against that agency, as compared to the ROP decisions at issue in this case against the Code Department officials responsible for administering that program.

"Chapter 54—entitled 'Enforcement of Municipal Ordinances'— grants municipalities the authority to enforce ordinances and defines the scope of this authority." *Whallon v. City of Houston*, 462 S.W.3d 146, 156 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). Chapter 54 "contains two distinct subchapters with provisions allowing municipalities to bring suit either before a civil trial court (Subchapter B) or a [BSC] (Subchapter C)." *Id.* Under Subchapter B, the municipality brings an enforcement action in its own name. *See* TEX. LOC. GOV'T CODE §§ 54.012–.013; *see also Jamestown Partners, L.P. v. City of Fort Worth*, 83 S.W.3d 376, 381– 82 (Tex. App.—Fort Worth 2002, pet. denied). Under Subchapter C, "[t]he governing body of [a] municipality may provide for the appointment of a [BSC] to hear and determine cases concerning alleged violations of the ordinance." TEX. LOC. GOV'T CODE § 54.033(a). It is the BSC that adjudicated the notices of violation that ultimately led to FBCC's BSC petition. ROA.2265-87.

As relevant to this dispute, it is the Code Compliance Department who is responsible for undertaking enforcement actions against residential landlords, including those implicating the ROP. AUSTIN MUN. CODE § 4-14-2(3); *id.* at §§ 4-14-50–53. Here, in the aftermath of Winter Storm Uri, that Department required FBCC to register Mueller Flats in

22

the ROP due to pre-existing violations that, according to that Department, had nothing to do with the separate violations it was issuing due to Uri (those FBCC ultimately litigated in the BSC suit). *Compare, e.g.,* ROA.2729-70, *with* ROA.2265-87. Necessarily, the BSC's adjudication of the Uri-related violations FBCC appealed in its BSC suit is not the same as the Code Department's adjudication of whether, allegedly separate violations qualified Mueller Flats for placement in the ROP—the subject of this suit.

While the district court concluded that the issue of privity was "undisputed," ROA.4156, essentially because "the City is the City," this analysis is overly simplistic and overlooks the different roles the departments played vis-à-vis the actions FBCC contested, both in the BSC suit and this suit. ROA.4156. Indeed, to suggest that Appellees controlled the BSC in the prior litigation would effectively conflate the real party in interest with the respondent, merging the BSC's role as a quasi-judicial adjudicative body with the City's role (in the BSC suit) as the real party in interest who advocated the legality of the notices of violation FBCC received. Must like a mandamus proceeding, the real party in interest typically defends the judge's order that is the subject of the attack. While the judge and the real party in that case may be aligned, that certainly does not mean that they are in privity. The same is true here: the BSC ruled in favor of the City's notices of violation, but that does not place the BSC in privity with the City for all purposes.

**B.    The Issues in This Case Could Not Have Been Litigated in the BSC Suit.**

For much the same reason, FBCC did not seek resolution of the same claims, or even claims that could have been litigated together, in the two disputes at issue.  Rather, to contest Uri-related notices of violation before the BSC, FBCC was required to invoke Chapter 54 of the Local Government Code to pursue that appeal and have the orders declared illegal and unenforceable.  TEX. LOC. GOV'T CODE § 54.039(a). Under that rubric, once the BSC issues a decision following its "quasi-judicial" review, an aggrieved owner may "present a petition to a district court, duly verified, *setting forth that the [BSC]'s decision is illegal*, in whole or in part, and specifying the grounds of the illegality."  *Id*. at § 54.039(a) (emphasis added).  "The *court may reverse or affirm, in whole or in part, or may modify the decision* brought up for review" but "[t]he district court's review shall be limited to a hearing under the substantial evidence rule."  *Id*. § 54.039(f) (emphasis added).

The relief afforded by that Code is quite restricted, limited only to an order affirming, reversing, or modifying the specific BSC orders at issue.  *Id*.  That Code does not also allow a contestant like FBCC to bring in other, unrelated orders that the BSC never adjudicated—like the ROP order here—to obtain monetary relief, or to adjudicate constitutional

24

claims like those FBCC raises about entirely different ordinances—the ROP ordinances—herein.[2]  *Id.*; *see also* ROA.1968.

To obtain the benefit of a *res judicata* determination, Appellees were required to show—as a matter of law—that FBCC actually raised, or could have raised, the same claim in its BSC suit as it has raised in this suit.  *See Daccach*, 217 S.W.3d at 449.  Appellees failed to make that showing in view of the fundamental disconnect between the scope of the BSC suit FBCC was allowed to prosecute and the vastly different suit it sought to litigate against the City and its officials related to the ROP. *Compare, e.g., Whallon*, 462 S.W.3d at 157-58 (refusing to apply *res judicata* where the petitioner was constrained in the first suit from prosecuting the full extent of relief it hoped to obtain).

Moreover, contrary to the district court's suggestion, the claims at issue in this suit do not "arise out of the same subject matter" as that at issue in the BSC suit and, in fact could not have been raised in that suit. ROA.4156.  Indeed, according to the City, the ROP determination flowed from violations that Mueller Flats incurred between 2019 and 2021 unrelated to Winter Storm Uri.  *See* ROA.2777-803.  And even the

---

[2] The judicial remedies available under Chapter 54 are, in fact, structured to discourage property owners from seeking judicial review.  If the panel's decision is modified or only partially reversed, a municipality can recover its attorney's fees, costs, and expenses from the property owner.  TEX. LOCAL GOV'T CODE § 54.039(f)–(h).  But the property owner who secures a complete reversal of the panel's decision is unable to recover *any* of its litigation expenses from the municipality.  *Id.*

portions of the BSC petition the court attempted to cull out to prove otherwise, *id.*, demonstrate only that the prior case was about orders and fines not at issue here, whereas, in this suit, relief is requested to remedy the City's administration and enforcement of the ROP—a separate program. ROA.4157-58. Therefore, on this record, there is a factual dispute that defeats the City's *res judicata* defense for purposes of summary judgment.

Overlooking these key distinctions, and the structure of the very statute the state crafted for aggrieved property to contest BSC orders, the district court still found the instant suit barred because it concluded that FBCC could, in theory, have brought additional claims in a state court proceeding against the City. ROA.4159-61. Whether FBCC otherwise could have contested the ROP in a *completely separate* state court proceeding, however, both misses and proves the point. It is because FBCC would have to bring a separate suit (whether in state or federal court) that *res judicata* could not apply. And whether FBCC could have brought a *different* suit involving different claims against different parties, does not mean in the suit FBCC did bring, it could have brought the claims the district court has since barred. *See Daccach*, 217 S.W.3d at 449. Therefore, the district court erred in finding the instant suit barred by *res judicata*. As such, FBCC respectfully requests that the Court vacate the district court's order and remand this case for further proceedings.

26

## II. THE DISTRICT COURT ABUSED ITS DISCRETION IN EXCLUDING TESTIMONY OF DR. THOMPSON.

The district court also abused its discretion by striking certain testimony of economist Dr. Thompson. ROA.4142-47. While the court concluded that Dr. Thompson could offer opinions regarding the economic damages FBCC incurred due to its placement in the ROP from March 2021 to present, ROA.4145, it precluded him from offering opinions regarding additional lost rental income FBCC experienced during the months its rental registration was suspended between November 2021 and January 2022, *id.* The court only struck that testimony upon concluding that Dr. Thompson's "testimony is based on an erroneous assumption"—namely, that FBCC had not rented any vacant units during the suspension. *Id.* But Dr. Thompson did, in fact, take such rentals into account in rendering his opinion, highlighting the error underlying the district court's analysis to the contrary. ROA.4076-80.

As the district court noted, "the rejection of expert testimony is the exception rather than the rule." ROA.4145; *see also* FED. R. EVID. 702, Adv. Comm. Notes (2000). Thus, so long as a qualified expert provides opinion testimony grounded in sufficient facts that is the product of reliable methods reliably applied to the case at hand, his or her testimony should not be excluded. *See, e.g.,* FED. R. EVID. 702; *Daubert v. Merrill Dow Pharms., Inc.,* 509 U.S. 579, 592-93 (1993). Here, FBCC met all of

these requirements with respect to Dr. Thompson's opinion testimony, including his opinions about FBCC's lost rental income.

While the City convinced the district court that the evidence demonstrated a gap, or improper assumption in Dr. Thompson's opinion in this respect, the evidence demonstrates, regardless of FBCC's live pleading at the time, that he knew FBCC had rented at least some vacant units while its rental registration was suspended and excluded that rental income from his calculations. ROA.4078-80. In fact, contrary to the district court's conclusion, ROA.4156, Dr. Thompson confirmed that he was not relying on FBCC's pleading and, instead, had prepared his opinions on the assumption that FBCC *had* rented and received rental income from certain units during the period of its suspension. ROA.3670-72.

Given that testimony, there was no merit to Appellees' criticism that a faulty assumption—that FBCC had not leased or derived income from any new rentals during its suspension—underlay Dr. Thompson's opinion. ROA.3670-75. The district court's order to the contrary ignores both this evidence and the general directive that the exclusion of expert testimony should be the exception, rather than the norm. *See Puga v. RCX Sol'ns., Inc.*, 922 F.3d 285, 294-95 (5th Cir. 2019) (noting, too, that questions about whether an expert missed "important facts" goes to the weight, not the admissibility, of the opinion at issue). Indeed, as this Court has explained, "[a]s a general rule, questions relating to the bases

28

and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *U.S. v. 14.38 Acres of Land, More or Less Situated in Leflore Cnty., State of Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (internal quotations omitted). "Experts should be excluded only if their testimony is so fundamentally unsupported that it cannot possibly help the factfinder." *Gen. Elec. Cap. Bus. Asset Funding Corp. v. S.A.S.E. Mil. Ltd.*, No. 03-cv-189, 2004 U.S. Dist. LEXIS 30714, at *15 (W.D. Tex. Oct. 21, 2004) (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)); *see also Imperial Trading Co., Inc. v. Travelers Prop. Cas. Co. of Am.*, No. 06-cv-4262, 2009 U.S. Dist. LEXIS 138687, at *9 (E.D. La. July 28, 2009) ("Matters left for the jury's consideration include the alleged miscalculations, erroneous assumptions, and inconsistencies that plaintiffs object to.").

As such, the Court should reverse that order and remand the case for further proceedings in which the entirety of Dr. Thompson's opinion testimony is admissible.

## III. THE COURT SHOULD NOT AFFIRM THE DISTRICT COURT'S DISMISSAL ORDER ON ANY OTHER BASIS.

Where, as here, a district court does not reach the merits of a summary judgment issue, an appellate court generally should remand to allow the district court to consider the merits of the issue in the first instance. *See McLendon v. U.S.*, 892 F.3d 775, 785 (5th Cir. 2018)

(declining to affirm a summary judgment motion on alternative grounds, since the district court did not reach the merits of the argument). In this manner, an appellate court "sits as a court of review, not [a court] of first view." *Zaragoza v. Union Pac. R.R. Co.*, 112 F.4th 313, 322 (5th Cir. 2024) (citation omitted). "Indeed, absent special circumstances, a federal appellate court will not consider an issue an issue passed over by the district court." *PHH Mortg. Corp. v. Old Repub. Nat'l Title Ins. Co.*, 80 F.4th 555, 563 (5th Cir. 2023) (citation omitted). For this purpose, special circumstances "include those in which the 'proper resolution is beyond any doubt' and those in which 'injustice might otherwise result.'" *Id.* (citations omitted). "[T]he interests of economy and efficiency" do not constitute special circumstances such that the court of appeals should adjudicate a matter not considered by the district court in the first instance. *Id.* at 564.

Applying these standards, FBCC respectfully submits that the Court should vacate the district court's summary judgment order and remand this case, rather than consider any of the other issues the parties raised in their cross-motions for summary judgment in the first instance. *Id.* If, however, the Court finds "special circumstances" or otherwise undertakes a *de novo* review implicating consideration of the merits of the parties' other summary judgment issues, those issues, too, warrant an order vacating the district court's summary judgment order and

remanding this case for trial. To preserve these issues, FBCC briefly discusses them below.

### A. Appellees Are Not Entitled to Summary Judgment on FBCC's Procedural Due Process Claims.

Asserting entitlement to judgment on FBCC's procedural due process claims, Appellees argued FBCC received appropriate process. ROA.2672-78. To assess that claim, the Court determines whether there is "a liberty or property interest which has been interfered with by the State" and "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). Courts assess the requisite protections by "balancing the private and governmental interests concerned." *Bevis v. City of New Orleans*, 686 F.3d 277, 280–81 (5th Cir. 2012). Here, that balance warrants a finding that FBCC's due process rights were violated by: (1) requiring FBCC to register Mueller Flats as a "repeat offender," (2) suspending Mueller Flats' rental registration, and (3) placing Mueller Flats' "repeat offender" status in the public deed records. ROA.151-52.

With zero notice or opportunity for a hearing, the City unilaterally decided that Mueller Flats was required to register. ROA.3407-11, 3516-20. And, when FBCC appealed that decision, the same employees who recommended the ROP designation presided over the appeal only after being bombarded with negative information about FBCC for weeks. ROA.3546. In fact, when FBCC tried to provide evidence to oppose the

ROP designation, the City made clear that such evidence—or any evidence—would not be considered. ROA.3412-32, 3531-34.

The designation also caused a cascade of negative effects that deprived FBCC of protected property and liberty interests, triggering additional procedural protections FBCC was not afforded. *See, e.g., Conroe Creosoting Co. v. Montgomery Cnty.*, 249 F.3d 337, 341 (5th Cir. 2001); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1046 (5th Cir. 1998); *Swann v. City of Dallas*, 922 F. Supp. 1184, 1196 (N.D. Tex. 1996); *Univ. of Tex. Med. Sch. at Houston v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). By publicly and falsely identifying Mueller Flats as a "repeat offender" without meaningful opportunity to respond or appeal, the City generated unwarranted and unjustified scorn via an equally unwarranted and unjustified absence of process. ROA.3412-39, 3613-15; *Wis. v. Constantineau*, 400 U.S. 433, 437 (1971); *Goss v. Lopez*, 419 U.S. 565, 574 (1975); *Marrero v. City of Hialeah*, 625 F.2d 499, 516–20 (5th Cir. 1980); *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701–02 (5th Cir. 1991); *State of Tex. v. Thompson*, 70 F.3d 390, 392–93 (5th Cir. 1995).

Adding insult to injury, the City made it clear that Mueller Flats would come off the ROP only at the City's whim. *See, e.g.,* ROA.3484-85. The City only removes a property from the ROP when it receives "no more complaints" or violations during the years-long registration period, ROA.3521-22, but any tenant, visitor, inspector, or anonymous person can lodge any complaint, no matter how minor, to generate a new

violation. Given the City's considerable discretion to issue and refuse to clear violations, no amount of diligence would be enough to escape the designation. ROA.3484-85.

## B. Appellees Are Not Entitled to Summary Judgment on FBCC's Substantive Due Process Claims.

Appellees are also not entitled to dismissal on their substantive due process challenge. ROA.3678-81. Substantive due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them," thereby "prevent[ing] governmental power from being used for purposes of oppression." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). To prevail on such a claim, a plaintiff must "establish that it held a constitutionally protected right" and, if so, that the denial of that right was not "related to a legitimate governmental interest." *Simi Inv. Co., Inc. v. Harris Cnty., Tex.*, 236 F.3d 240, 250-51 (5th Cir. 2000). Typically, "government action that applies broadly gets rational basis [review]; government action that is individualized to one or a few plaintiffs gets [the] shocks the conscience [test]." *Reyes v. N. Tex. Tollway Auth.*, 861 F.3d 558, 562 (5th Cir. 2017).

The ROP does not bear a "substantial relation to the public health, safety, morals, or general welfare." *FM Prop. Op. Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996) (citing *Vill. of Euclid v. Amber Realty Co.*, 272 U.S. 365, 396 (1926)); *Mikeska v. City of Galveston*, 451 F.3d 376, 380-81 (5th Cir. 2006) (holding that, although the government had

identified "a legitimate state interest at stake," the government failed to provide any rational reason why its contested actions furthered that interest). Here, Appellees admit that a property owner may be required to register as a repeat offender, even if no tenants are affected by the alleged violations. ROA.3432. Refusing to pay the ROP fee—an action that has nothing to do with public health or safety—also can keep a property in the ROP. ROA.3527-28. The same is true of the ROP signage the City requires, ROA.3402, and the document the City places in the property's chain-of-title, ROA.3403-05. A reasonable jury could find that Appellees' ROP enforcement bears no reasonable relationship to public health, safety, morals, or general welfare, *Reyes*, 861 F.3d at 562–63, meaning Appellees failed to "demonstrate[] the requisite rational relationship to sustain [their] motion for summary judgment." *Mikeska*, 451 F.3d at 381.

Even under the "shocks the conscious" standard Appellees urged, ROA.2679-80, a reasonable jury could find that the ROP actions as applied to Mueller Flats meet that test. Not only did the City's representative admit a general disconnect between the ROP and health and safety as applied, the specific violations the City prosecuted here were not born out by the City's own evidence or otherwise did not impact the health, safety, or welfare of Mueller Flats' residents. ROA.3412-39. Thus, Appellees' assertion that placing Mueller Flats in the ROP under the "2-5-2 rule" was justified is undercut by the very evidence it cites.

34

*Compare* ROA.2679, *with* ROA.3412-39. Moreover, neither the City's corporate representative nor director knew whether the City conducted the two-year "look-back" required for Mueller Flats to have its ROP registration absolved in March 2023. ROA.3394-95, 2537-28. Taking the evidence in the light most favorable to FBCC, a reasonable jury could find that Appellees' conduct towards Mueller Flats shocks the conscience and violates FBCC's substantive due process rights.

### C. Appellees Are Not Entitled to Summary Judgment on FBCC's Takings Claim.

Appellees are not entitled to summary judgment on FBCC's takings claim. "A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it." *Knick v. Township of Scott, Pa.*, 588 U.S. 180, 185 (2019). Even a valid exercise of a municipality's police powers can constitute a compensable taking. *Baker v. City of McKinney, Tex.*, 84 F.4th 378, 383–84 (5th Cir. 2023). Here, Appellees' actions amounted to a taking without just compensation, thereby enabling FBCC to bring this claim under 42 U.S.C. § 1983. *See Knick*, 588 U.S. at 185.

Under the Supreme Court's regulatory jurisprudence, if a government "'regulation goes too far it will be recognized as a taking.'" *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 301, 325–26 (2002) (quoting *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415 (1922)). The Court may consider the following factors in assessing

whether a regulatory taking has occurred: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).

Here, the evidence demonstrates a significant economic impact on FBCC. Among other things, FBCC experienced a significant decline in its reasonable investment-backed expectations as a result of Appellees' designation of Mueller Flats as a repeat offender. ROA.3623-28. Coupled with Appellees' documentation of Mueller Flats as a repeat offender in the public deed records—something the ROP does not even require—the decision to advertise Mueller Flats as a repeat offender and require FBCC to do the same has significantly diminished the value of the property and deprived FBCC of its investment-backed expectations. *See, e.g.,* ROA.3460-67, 3484-94, 3505-06. Indeed, when FBCC hoped to sell the property as rent and sales prices were soaring after COVID-19, it found itself unable to do so, as the ROP designation thwarted FBCC's efforts to sell for a fair price. ROA.3495-503. According to FBCC's expert, Mr. Pereira, the inability to sell at the height of the market cost FBCC at least $10 million. ROA.3627-28. Here, too, there is a disconnect between any legitimate interest and the actions Appellees took to place and keep FBCC in the ROP with no meaningful opportunity to rebut or remove that designation, even after the expiration of the initial 2-year term.

36

ROA.3402, 3412-32. Thus, at best, Appellees' arguments raised a genuine issue of fact, not a reason to grant summary judgment.

### D. Appellees Are Not Entitled to Summary Judgment on FBCC's First Amendment Claim.

Both parties moved for summary judgment on FBCC's First Amendment claim—a claim based on the compelled speech the ROP requires against FBCC's wishes. *See* ROA.2393-98, 2684-87. Under the ROP, FBCC was required to prominently display signs throughout the Mueller Flats complex providing notice that it is a "Repeat Offender." AUSTIN MUN. CODE § 4-14-34(A). This compelled speech violated FBCC's First Amendment rights. "[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). Thus, a law that requires speech and mandates what must be said should be treated as "target[ing] speech based on its communicative content and therefore presumptively unconstitutional, only to be upheld if the government proves that [the law is] narrowly tailored to serve compelling state interests." *Bongo Prods., LLC v. Lawrence*, 603 F. Supp. 3d 584, 604 (M.D. Tenn. 2022) (quoting *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019) (internal quotations omitted)). With the exception of commercial advertising, the government "may not compel affirmance of a belief with which the speaker disagrees." *Book People, Inc. v. Wong*, 91

F.4th 318, 339–40 (5th Cir. 2024) (quoting *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 573 (1995)); *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755 (2018) (quoting *Riley v. Nat'l Fed. of Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988)).

Here, the City's ROP regulations explicitly require FBCC to speak a particular government-drafted message through signs that alter the content of FBCC's speech in a manner with which FBCC disagrees. AUSTIN MUN. CODE § 4-14-34(A). This is a violation of free speech that does not pass the governing strict scrutiny review. *See Masonry Building Owners of Or. v. Wheeler*, 394 F. Supp. 3d 1279, 1305-08 (D. Or. 2019) (holding that content-based regulation mandating a display of placards state that plaintiff's building was unsafe did not survive strict scrutiny); *Bongo Prods., LLC*, 603 F. Supp. 3d at 605-09 (holding that signage mandating speech about transgender restrooms on business premises was constitutionally-infirm, compelled speech that likewise did not survive strict scrutiny review). The signage requirement conveys the message that Mueller Flats is unsafe when, in reality—as even Appellees admitted—there was no such finding pursuant to the ROP itself, and FBCC is given no ability to put that designation into any proper context, only allowing what the ordinance mandates. ROA.3432, 3442-43, 3529-30, 3630-31. FBCC has a right to "decide 'what not to say'"—a right "enjoyed by business corporations generally." *Hurley*, 515 U.S. at 573-574 (quoting *Pac. Gas & Elec. Co. v. Pub. Util. Comm'n of Cal.*, 475 U.S.

1, 16 (1986)).　Ultimately, the City's compelled speech requirements violate that established right and impinge on FBCC's First Amendment rights against compelled speech—rights that exist not only under the U.S. Constitution, but the "broader" Texas Constitution, as well. *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 367 (5th Cir. 1995), *abrogated on other grounds by Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998); *see also Davenport v. Garcia*, 834 S.W.2d 4, 8 (Tex. 1992).

### E.　Appellees Are Not Entitled to Summary Judgment on FBCC's Preemption Claim.

Lastly, the parties filed competing motions for summary judgment on FBCC's preemption claim—a claim that the ROP is preempted by Chapter 92 of the Texas Property Code.　ROA.2391-93, 2687-89.　"An ordinance that attempts to regulate a subject matter preempted by a state statute is unenforceable to the extent it conflicts with a state statute." *City of San Antonio v. Greater San Antonio Builders Ass'n*, 419 S.W.3d 597, 601 (Tex. App.—San Antonio 2013, pet. denied) (citing *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490-91 (Tex. 1993)).　If the statute and ordinance cannot be reconciled, the statute trumps.　*Id.* (citing *Dallas Merchant's*, 852 S.W.2d at 490-92)).　Where, as here, the purpose of legislation is frustrated by concurrent enforcement of a municipal ordinance, the ordinance is unenforceable.　*ESI/Emp. Sols., L.P. v. City of Dallas*, 531 F. Supp. 3d 1181, 1192 (E.D. Tex. 2021); *Washington v. Assoc. Builders & Contractors*

39

*of S. Tex. Inc.*, 621 S.W.3d 305, 314 (Tex. App.—San Antonio 2021, no pet.).

Here, the City's ROP ordinances are preempted under the Texas Constitution, Article XI, § 5, because they are impermissibly inconsistent with Chapter 92 of the Texas Property Code. *See* TEX. ATT'Y GEN. OP. JM-790 at 3739 (1987). A municipality may not enact an ordinance that permits a tenant to deduct expenditures made to repair deficiencies that a landlord had a duty, but unreasonably failed to repair, reasoning: "It is clear from the reading of the relevant provisions of the Property Code that the legislature intended to occupy the field in this area of landlord-tenant rights." *Id.* at 3738-39.

Section 92.054(a) is clear: "If a condition results from an insured casualty loss, such as fire, smoke, hail, explosion, or a similar cause, the period for repair does not begin until the landlord receives the insurance proceeds." TEX. PROP. CODE §§ 92.054(a), 92.061 ( "[t]his subchapter does not impose obligations on a landlord . . . other than those expressly stated in this subchapter"). The plain language of the statute is not limited only to the rights and responsibilities attendant to the landlord-tenant relationship. *Id.* at § 92.061. Rather, under Chapter 92, the City may not impose a duty or liability upon a landlord that is not set forth in the Property Code itself. *Id.* The City's ROP ordinances do just that— requiring repairs and maintenance in the face of an alleged violation,

even before insurance monies are received—and, therefore, are preempted. *See* AUSTIN MUN. CODE at § 4-14-33.

In sum, section 92.054 states plainly that the period for a landlord to make necessary repairs does not begin until the landlord receives insurance proceeds. TEX. PROP. CODE § 92.054. It provides no exceptions. *Id.* Accordingly, the challenged ROP ordinances are preempted, and Appellees' summary judgment motion on this issue was without merit.

## CONCLUSION

The district court erroneously disposed of FBCC's claims on *res judicata*—a basis that plainly does not apply given the disconnect between the issues FBCC seeks to litigate in this case and those FBCC was able to bring and resolve in its prior administrative dispute with a different party, the BSC. While the Court need look no further to vacate and remand, should the Court adjudicate any other dispositive issue, those issues, too, provide no basis to affirm the district court's summary judgment order. At the same time, the Court should reverse the district court's order precluding FBCC's expert, Dr. John Thompson, from testifying about FBCC's lost rental income during the period the City had suspended its rental registration—testimony that was qualified, reliable, and based on an appropriate methodology.

Respectfully submitted,

*/s/ Kevin J. Terrazas*
Kevin J. Terrazas

41

42

Eric A. Hudson
Jennifer A. Foster
TERRAZAS PLLC
1001 S. Capital of Texas Hwy.
Building L, Suite 250
Austin, Texas 78746
(512) 680-3257

*Counsel for Appellant FBCC
CityPoint, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing appellate brief was filed electronically on September 5, 2025, and will, therefore, be served electronically upon all counsel via the Court's CM/ECF system.

/s/ Kevin J. Terrazas
Kevin J. Terrazas

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing brief complies with Federal Rule of Appellate Procedure 32(a)(7)(B) and (C) because it contains 9,804 words. The brief also complies with the typeface and style requirements of Federal Rules of Appellate Procedure 32(a)(5) & 32(a)(6) because it has been prepared in a proportionally spaced, roman style typeface of 14 points or more.

/s/ Kevin J. Terrazas
Kevin J. Terrazas