No. 25-50293

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

FBCC CITYPOINT, L.P.,
*Plaintiff-Appellant*

v.

CITY OF AUSTIN and JESUS GARZA, DANIEL WORD, JOSE ROIG,
and MATTHEW NORIEGA, *in their official capacities*,
*Defendants-Appellees*

On Appeal from the United States District Court for the Western
District of Texas, Austin Division No. 1:22-CV-01272-DAE

**APPELLEES' BRIEF**

DEBORAH THOMAS, CITY ATTORNEY
VASU BEHARA, LITIGATION DIVISION CHIEF
Hannah M. Vahl, Assistant City Attorney
State Bar No. 24082377
hannah.vahl@austintexas.gov
Telephone (512) 974-2346
Paul Matula, Assistant City Attorney
State Bar No. 13234354
paul.matula@austintexas.gov
Telephone (512) 974-2346
AUSTIN CITY ATTORNEY'S OFFICE
P. O. Box 1546
Austin, Texas 78767-1546
Facsimile (512) 974-1311

**COUNSEL FOR APPELLEES**

# CERTIFICATE OF INTERESTED PERSONS

Appellee City of Austin is not required to file a disclosure statement because it is a governmental corporation. *See* 5th Cir. R. 28.2.1.

/s/    *Hannah M. Vahl*
Hannah M. Vahl

## STATEMENT REGARDING ORAL ARGUMENT

This appeal involves uncomplicated *res judicata* principles, making oral argument unnecessary. The City, however, welcomes the opportunity to present oral argument if the Court desires.

# TABLE OF CONTENTS

**CERTIFICATE OF INTERESTED PERSONS**.................................... ii

**STATEMENT REGARDING ORAL ARGUMENT** .........................iii

**TABLE OF CONTENTS**.................................................................... iv

**INDEX OF AUTHORITIES** ...........................................................vii

**STATEMENT OF JURISDICTION**....................................................1

**STATEMENT OF THE ISSUES**.........................................................2

**STATEMENT OF THE CASE**............................................................3

    A.    After Winter Storm Uri, Mueller Flats residents
are left without running water for weeks. .................................3

    B.    The City investigates Code violations at Mueller Flats
and issues notices of violation ("NOVs"). ..................................4

    C.    The City requires Mueller Flats to
register with the Repeat Offender Program ("ROP"). ..............5

    D.    FBCC appeals the requirement to register
with ROP and loses. ..............................................................8

    E.    The City Building and Standards Commission ("BSC")
issues orders enforcing NOVs, and FBCC sues the City
in state court over the BSC orders.............................................9

    F.    The City suspends Mueller Flats' rental registration
under ROP, which Mueller Flats ignores, and then restores
its rental registration less than two months later.....................9

G.     FBCC wins its state court lawsuit against the City................ 11

H.     FBCC files this federal lawsuit against the City..................... 12

I.      The district court strikes in part one of FBCC's
expert's testimony which quantified FBCC's alleged harm
from the suspension FBCC did not abide by. ......................... 12

J.      The district court grants the City's
motion for summary judgment on res judicata grounds
without reaching any other issues. .......................................... 14

**STANDARDS OF REVIEW** ....................................................................15

**SUMMARY OF THE ARGUMENT** ......................................................17

**ARGUMENT** ...........................................................................................18

I.      The district court correctly granted
summary judgment on res judicata grounds. .......................... 18

    A.   First element: it is undisputed that there was a prior final
judgment on the merits from the First Lawsuit..................... 20

    B.   Second element: there is identity of the parties
or those in privity with the parties between
the Second Lawsuit and the First Lawsuit. .......................... 20

       1.   The BSC is the City. ...................................................... 20

       2.   If not the City, the BSC is in privity with the City. ........ 24

    C.   Third element: the claims in the Second Lawsuit either were
or could have been raised in the First Lawsuit. ..................... 26

v

II. The City was entitled to summary judgment on alternative grounds. ..................................................35

A. The City was entitled to summary judgment on FBCC's procedural due process claim. ...............36

B. The City was entitled to summary judgment on FBCC's substantive due process claim. ............39

C. The City was entitled to summary judgment on FBCC's takings claim. ......................................40

D. The City was entitled to summary judgment on FBCC's First Amendment claim. ......................42

E. The City was entitled to summary judgment on FBCC's preemption claim...............................45

III. FBCC's challenge to the exclusion of expert testimony should be rejected. ...............................................46

A. FBCC has not shown its substantial rights were affected by the district court's alleged error in partially excluding the testimony of one of its damages experts...........................46

B. There is no abuse of discretion in striking expert testimony contradicted by the facts. .....................................48

**CONCLUSION**.....................................................................52

**CERTIFICATE OF COMPLIANCE**...................................53

**CERTIFICATE OF SERVICE**.........................................54

# INDEX OF AUTHORITIES

**Cases**

*Amstadt v. U.S. Brass Corp.,*
   919 S.W.2d 644 (Tex. 1996)........................................................ 19, 26

*Baran v. Port of Beaumont Nav. Dist. of Jefferson Cnty., Tex.,*
   57 F.3d 436 (5th Cir. 1995) .................................................................38

*Barr v. Resol. Tr. Corp. ex rel. Sunbelt Fed. Sav.,*
   837 S.W.2d 627 (Tex. 1992).............................................. 26, 27, 31, 32

*BCCA Appeal Grp. v. City of Houston,*
   496 S.W.3d 1, 7 (Tex. 2016)...............................................................45

*Benson v. Wanda Petroleum Co.,*
   468 S.W.2d 361 (Tex.1971)................................................................24

*Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.,*
   754 F.3d 272 (5th Cir. 2014) .............................................................35

*Carlson v. Bioremedi Therapeutic Sys., Inc.,*
   822 F.3d 194 (5th Cir. 2016) .............................................................16

*Citizens Ins. Co. of Am. v. Daccach,*
   217 S.W.3d 430 (Tex. 2007)......................................................... 19, 35

*City of Dallas v. Stewart,*
   361 S.W.3d 562 (Tex. 2012)...............................................................33

*City of El Paso v. Caples Land Co., LLC,*
   408 S.W.3d 26 (Tex. App.—El Paso 2013, pet. denied) ......................22

*City of El Paso v. Heinrich,*
   284 S.W.3d 366 (Tex. 2009)...............................................................24

*City of Houston v. Houston Pro. Fire Fighters' Ass'n, Loc. 341,*
  664 S.W.3d 790 (Tex. 2023)......................................................45

*Compelled Speech and the Regulatory State,*
  97 Ind. L.J. 881 (2022) ..........................................................43

*Cox v. Nueces County, Texas,*
  839 F.3d 418 (5th Cir. 2016) ..............................................33, 34

*Dairyland County Mutual Ins. Co. of Texas v. Childress,*
  650 S.W.2d 770 (Tex. 1983)...............................................24, 25

*Dall. Merch.'s & Concessionare's Ass'n v. City of Dallas,*
  852 S.W.2d 489 (Tex. 1993)...................................................45

*Darby v. Pasadena Police Dep't,*
  939 F.2d 311 (5th Cir. 1991) ..................................................22

*Daubert v. Merrell Dow Pharms., Inc.,*
  509 U.S. 579 (1993) ...............................................................47

*Dresser-Rand Co. v. Virtual Automation Inc.,*
  361 F.3d 831 (5th Cir. 2004) ..................................................46

*Fontenot v. Upjohn Co.,*
  780 F.2d 1190 (5th Cir. 1986) ................................................19

*Gabriel v. City of Plano,*
  202 F.3d 741 (5th Cir. 2000) ..................................................16

*Getty Oil Co. v. Ins. Co. of N. Am.,*
  845 S.W.2d 794 (Tex. 1992)....................................................24

*Gilbert v. Donahoe,*
  751 F.3d 303 (5th Cir. 2014) ..................................................15

*Guardino v. Hart,*
No. 22-20278, 2023 WL 3818378 (5th Cir. June 5, 2023) .................24

*Guillory v. Domtar Indus. Inc.,*
95 F.3d 1320 (5th Cir. 1996) ....................................................... 48, 50

*Harris v. FedEx Corp. Servs., Inc.,*
92 F.4th 286 (5th Cir. 2024).................................................................15

*Hignell-Stark v. City of New Orleans,*
154 F.4th 345 (5th Cir. 2025)...............................................................44

*Holtzclaw v. DSC Commc'ns Corp.,*
255 F.3d 254 (5th Cir. 2001) ...............................................................35

*Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n,*
426 U.S. 482 (1976) .............................................................................38

*Illinois Fuel & Retail Ass'n, Saunders Oil Co. v. Illinois Dep't of Revenue,*
608 F. Supp. 3d 699 (C.D. Ill. 2022)....................................................45

*Kim v. Am. Honda Motor Co., Inc.,*
86 F.4th 150 (5th Cir. 2023)................................................................15

*Knight v. Kirby Inland Marine, Inc.,*
482 F.3d 347 (5th Cir. 2007) ................................................. 15, 16, 48

*Lingle v. Chevron U.S.A.,*
544 U.S. 528 (2005) .............................................................................41

*Lynwood Park Invs. v. City of Houston,*
No. 01-96-00966-CV, 1997 WL 549327
(Tex. App.—Houston [1st Dist] Aug. 29, 1997, pet. denied)................23

*Mathews v. Eldridge,*
424 U.S. 319 (1976) .............................................................................36

*McDonald v. Steward,*
132 F.3d 225 (5th Cir.1998) .................................................................. 16

*Mowbray v. Cameron Cty.,*
274 F.3d 269 (5th Cir. 2001) ................................................................. 19

*Nat'l Inst. of Fam. & Life Advocs. (NIFLA) v. Becerra,*
585 U.S. 755 (2018) .............................................................................. 43

*New York State Rest. Ass'n v. New York City Bd. of Health,*
556 F.3d 114, 136 (2d Cir. 2009) ......................................................... 45

*Paz v. Brush Engineered Materials, Inc.,*
555 F.3d 383 (5th Cir. 2009) ..................................................... 48, 49, 50

*Penn Cent. Transp. Co. v. New York City,*
438 U.S. 104 (1978) .............................................................................. 41

*Puga v. RCZ Solutions., Inc.,*
922 F.3d 285 (5th Cir. 2019) ................................................................ 50

*R J Reynolds Tobacco Co. v. Food & Drug Admin.,*
96 F.4th 863 (5th Cir. 2024) ........................................................... 43, 44

*Reyes v. N. Texas Tollway Auth. (NTTA),*
861 F.3d 558 (5th Cir. 2017) ................................................................ 39

*Rosetta Res. Operating, LP v. Martin,*
645 S.W.3d 212 (Tex. 2022) ................................................................. 19

*San Jacinto Sav. & Loan v. Kacal,*
928 F.2d 697 (5th Cir. 1991) ................................................................ 38

*SO Apartments, L.L.C. v. City of San Antonio,*
109 F.4th 343 (5th Cir. 2024) .......................................................... 36, 37

*Turk-Am Phoenix Props., Inc. v. City of Bryan*,
   No. 10-24-00168-CV, 2025 WL 1340532
   (Tex. App.—Waco May 8, 2025, no pet.) ...............................................22

*Tyson v. Sabine*,
   42 F. 4th 508 (5th Cir. 2022) .................................................................40

*United States v. Salerno*,
   481 U.S. 739 (1987) ...............................................................................40

*Vaughner v. Pulito,*
   804 F.2d 873 n. 2 (5th Cir.1986) ...........................................................20

*W. Virginia State Bd. of Educ. v. Barnette*,
   319 U.S. 624 (1943) ...............................................................................44

*Weaver v. Tex. Capital Bank N.A.*,
   660 F.3d 900 (5th Cir. 2011) .................................................................19

*Weber v. BNSF Ry. Co.*,
   989 F.3d 320 (5th Cir. 2021) .................................................................15

*Withrow v. Larkin*,
   421 U.S. 35 (1975) .................................................................................38

*Wood v. Bexar Cnty., Texas*,
   147 F.4th 534 (5th Cir. 2025)................................................................47

*Wooley v. Maynard*,
   430 U.S. 705 (1977) ...............................................................................44

*Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio*,
   471 U.S. 626 (1985) ...............................................................................43

**Statutes**

28 U.S.C. § 1291 .........................................................................................1

28 U.S.C. § 1331 ............................................................... 1

28 U.S.C. § 1336 ............................................................... 1

28 U.S.C. § 2111 ............................................................. 48

Austin, Tex. City Code § 4-14-20 ....................................... 6

Austin, Tex. City Code § 4-14-3 ......................................... 6

Austin, Tex. City Code § 4-14-31 ....................................... 7

Austin, Tex. City Code § 4-14-32 ....................................... 6

Austin, Tex. City Code § 4-14-33 .................................. 6, 45

Austin, Tex. City Code § 4-14-34 .................................. 6, 45

Austin, Tex. City Code § 4-14-40 ....................................... 7

Austin, Tex. City Code § 4-14-41 ....................................... 7

Austin, Tex. City Code § 4-14-5 ................................... 8, 38

Austin, Tex. City Code § 4-14-50 ..................................... 10

Austin, Tex. City Code § 4-14-52 ..................................... 10

Austin, Tex. City Code § 4-14-7 ................................... 7, 41

Austin, Tex. City Code art. I § 3 ..................................... 23

Tex. Loc. Gov't Code § 211.008....................................... 22

Tex. Loc. Gov't Code § 211.011....................................... 22

Tex. Loc. Gov't Code § 214.0012..................................................................22

Tex. Loc. Gov't Code § 54.033...................................................................21

Tex. Loc. Gov't Code § 54.039................................................... 22, 23, 34

Tex. Prop. Code § 92.002 ...........................................................................47

Tex. Prop. Code § 92.054 ...........................................................................32

**Other Authorities**

Restatement (Second) of Judgments § 24(1) (1982) ................................28

**Rules**

Fed. R. App. P. 4........................................................................................1

Fed. R. Civ. P. 56.....................................................................................16

Fed. R. Evid. 201 ......................................................................................40

## STATEMENT OF JURISDICTION

The parties agree the district court had subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1336. The district court entered a final judgment on March 14, 2025. ROA.4163. FBCC timely filed its notice of appeal on April 8, 2025. ROA.4188; Fed. R. App. P. 4(a)(1)(A). This court has appellate jurisdiction over the district court's final judgment under 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

1. **Res judicata**. Did the district court correctly find FBCC's claims were barred by *res judicata* because they were not raised in a related state-court lawsuit FBCC filed first and litigated to final judgment before bringing this suit?

2. **Alternative bases for summary judgment**. If the district court was incorrect that *res judicata* barred FBCC's claims, was the City entitled to summary judgment on alternative grounds supported by the record?

3. **Expert testimony**. Did the district court abuse its discretion and commit harmful error in partially excluding expert testimony on the ground that the testimony was contrary to the undisputed facts?

**STATEMENT OF THE CASE**

This case is about an unscrupulous apartment complex ignoring City Code enforcement. When Winter Storm Uri left Mueller Flats residents unlivable conditions for weeks on end, the City stepped up its Code enforcement efforts to try to bring Mueller Flats into compliance using tools at its disposal: a Building and Standards Commission ("BSC") orders and Repeat Offender Program ("ROP") registration. Mueller Flats' owner selectively challenged one tool, BSC orders, in a state-court lawsuit. It then lay behind the log and brought a federal lawsuit challenging that other tool, ROP, only after prevailing in the first state-court lawsuit. *Res judicata* prevents this sort of gamesmanship.

**A.    After Winter Storm Uri, Mueller Flats residents are left without running water for weeks.**

In mid-February 2021, Winter Storm Uri hit the Austin area hard. This unprecedented weather event left many without power for days, affected travel and mobility, and caused significant structural damage. Residents of the 400-unit Mueller Flats apartment complex, an aging investment property owned by FBCC, exceptionally hard. ROA.2912; ROA.2909. The complex sprang over a thousand leaks. ROA.2916. It was more than three weeks before Mueller Flats' management restored

3

consistent cold water to the property, then nearly a month more for hot water. ROA.2915, ROA.2915. Residents were forced to use swimming pool water to flush their toilets. ROA.2950. Damaged sheetrock and flooring made many units uninhabitable. ROA.2935; ROA.2902-03. FBCC charged its tenants full rent throughout this period and threated to evict those who did not pay. ROA.2944; ROA.2950-51. Not surprisingly, local news media covered the tenants' plight extensively for months.[1]

**B.    The City investigates Code violations at Mueller Flats and issues notices of violation ("NOVs").**

City Code investigated numerous complaints[2] and found many health and safety code violations at Mueller Flats following Uri. FBCC

---

[1] *See, e.g.*, Sarah Asch, "Tenants in Northeastern Austin Describe Unlivable Conditions Two Months After Texas freeze," Austin-American Statesman (April 10, 2021), *available at* https://www.statesman.com/story/news/2021/04/10/austin-tenants-say-apartments-unlivable-after-texas-storm freeze/7161203002/.

[2] If a person complains, Code investigates. ROA.2890-91. If a Code officer confirms a violation, the officer issues the property owner a notice of violation identifying the violation, corrective action needed, and timeframe to comply. ROA.2890-91. If the owner needs more time, the officer can grant the owner an extension on request. ROA.2890-91. An owner may appeal a notice of violation to the City's Building and Standards Commission ("BSC"). ROA.2890-91. If a property owner fails to correct the violation in the time stated for compliance, a Code officer can issue a citation, seek a BSC order, or take enforcement action in municipal court. ROA.2890-91.

alleges City inspectors "swarmed" instead of helping management meet their obligations to provide utilities. ROA.2931. FBCC management balked when City code enforcement officers requested an "action plan" on remedying Uri-related issues tenants faced. ROA.3020-21. FBCC principal Cary Krier told one City inspector: "Do not contact us again without citing us. You are a time waster and a bully." ROA.3020-21. He blamed boiler issues on a "saboteur." ROA.3023.

## C. The City requires Mueller Flats to register with the Repeat Offender Program ("ROP").

Also following Uri, the City looked at placing Mueller Flats on ROP, a rental registration program designed to protect tenant health and safety. To be eligible for ROP, a rental property needed to meet the following "2-5-2 criteria":

(1) two or more separate notices of violation are issued for the same property within a consecutive 24-month period and the owner fails to correct the violations within the required time period;

(2) five or more separate notices of violation are issued on separate days for the same property within a consecutive 24-month period, regardless of whether the owner of the property corrects the violations within the required time period; or

(3) two or more citations are issued for the same property within a consecutive 24-month period.

Austin, Tex. City Code § 4-14-3(A).

Only violations that "relate to Chapter 25-12 (Technical Codes), Chapter 10-5, Article 2 (Sanitary Condition of Real Property), Chapter 10-7 (Pools and Spas), or Section 25-11-32 (Permit Required)" count. Austin, Tex. City Code § 4-14-3(B).

If ROP registration is required, the owner must register and pay an annual fee ($380 back in 2021). Austin, Tex. City Code §§ 4-14-20, 4-14-32; ROA.2887. A property's ROP registration notice must be displayed in the public area of an onsite management office or similar public area. Austin, Tex. City Code § 4-14-33. The property must also post 12" x 24" signs, one in the common area for every fifty units, stating the property's emergency phone number and how to report code violations to the City. Austin, Tex. City Code § 4-14-34(A)–(C).[3] Code inspectors may conduct

---

[3] FBCC claims the program required it to post signs about its repeat offender status around its premises. Br. at 6. That is not quite accurate. A ROP registrant must post signs with an emergency maintenance number and how to report Code violations to the City around its property. Austin, Tex. City Code § 4-14-34. It must also separately display its rental registration in a single location which is in a public area of an on-site management office or other similar public area of the property. Austin, Tex. City Code § 4-14-33. FBCC objected to doing any of this, and it is not clear to what extent it complied.

annual inspections of ROP properties, but owners must either consent or the City must obtain an administrative warrant to inspect. Austin, Tex. City Code §§ 4-14-41(A); 4-14-40(E).

ROP registration lasts for a minimum of two years. Austin, Tex. City Code § 4-14-31(A). If ROP registration is required, the City files a notice in the real property records. ROA.2885. This public notice informs potential purchasers of the property about the program requirements, along with a purchaser's right to have a property removed from the program if compliance is achieved within 90 days of purchase. Austin, Tex. City Code § 4-14-7; ROA.2885. If a property comes off ROP, the City files another notice in the real property records noting that registration is no longer required. ROA.2885.

In the months after the storm, Code Department Director José Roig directed that no Uri-related violations be used for ROP qualification under the "2-5-2 criteria," but Mueller Flats qualified for ROP based on violations from 2019 through 2021 (*i.e.*, prior to Uri). ROA.2884; ROA.2738-2766. The City decided what properties should be included on ROP at its periodic ROP Committee meetings. ROA.2891. At the ROP Committee's March 2021 meeting, the committee discussed Mueller Flats

and ten other properties for potential inclusion in ROP. ROA.2891. The committee agreed Mueller Flats qualified for ROP. ROA.2891. The City then sent FBCC a letter dated March 29, 2021 that Mueller Flats was required to register with ROP. ROA.2768-2770.

### D. FBCC appeals the requirement to register with ROP and loses.

As was its right, FBCC administratively appealed the decision requiring Mueller Flats to register for ROP. Pendency of the appeal stayed the registration requirement. ROA.2772-2773; Austin, Tex. City Code § 4-14-5(D). In May 2021, FBCC's appeal was heard by a three-member panel. One panel member had participated in the March 2021 ROP committee meeting, which when the committee decided to place Mueller Flats on ROP. ROA.2728-2734; ROA.2892-2893. In addressing the hearing panel, Krier did not contest whether Mueller Flats met the "2-5-2 criteria" and instead argued that the criteria was unfair and Uri-related violations should not count for purposes of ROP qualification. But even without counting any Uri-related violations, Mueller Flats met the "2-5-2 criteria." ROA.2892-2893; ROA.2804. The panel recommended denial of FBCC's appeal, which Director Roig adopted on May 17, 2021.

8

ROA.2821-2822. The City then placed Mueller Flats on ROP, although FBCC never completed the application or paid the fee. ROA.2885.

**E. The City Building and Standards Commission ("BSC") issues orders enforcing NOVs, and FBCC sues the City in state court over the BSC orders.**

Meanwhile, with Uri-related violations still open at Mueller Flats, City Code sought a BSC order against FBCC to try to get it to achieve compliance. The BSC issued orders requiring repairs on penalty of fines at a May 13, 2021 meeting. ROA.2964-88. In June 2021, while Mueller Flats was registered with ROP, FBCC sued the City in state district court, challenging the BSC's orders ("First Lawsuit"). ROA.2964-88. In the First Lawsuit, FBCC complained the City's post-Uri Code enforcement was unfair and violated due process, and that the Property Code preempted its requirements. ROA.2965-2987; 2993-2994. That lawsuit remained pending until final judgment was entered on October 17, 2022. ROA.2990-2991.

**F. The City suspends Mueller Flats' rental registration under ROP, which Mueller Flats ignores, and then restores its rental registration less than two months later.**

In October 2021, with multiple outstanding violations still open at Mueller Flats, the City notified FBCC of its intent to suspend its rental

9

registration based on still-open violations. ROA.2832-34. The suspension

works as follows:

- A ROP property's rental registration may be suspended if the property is declared substandard or dangerous, if its owner fails to timely comply with a notice of violation, or if the owner fails to comply with ROP or permitting requirements or fails to pay the annual fee. Austin, Tex. City Code § 4-14-50(A).

- Suspension is effective until the Code Official determines the registrant has complied with the requirements of Chapter 4-14, an order of the BSC, code official, court of competent jurisdiction, or a notice of violation. Austin, Tex. City Code § 4-14-50(B).

- During suspension, a property may not lease or otherwise allow vacant units to be occupied or an occupied unit to be occupied by new tenants. Austin, Tex. City Code § 4-14-50(C).

- Before the City suspends a property's rental registration, it provides written notice of intent to suspend to the property owner and a reasonable time to comply. Austin, Tex. City Code § 4-14-50(D),(E).

- An owner may appeal a suspension to the BSC. Austin, Tex. City Code § 4-14-52.

The City's notice of intent to suspend FBCC's rental registration

provided notice of the open violations and gave FBCC a month to correct

the identified issues before suspension began. ROA.2832-34. Thereafter,

with Mueller Flats by its own admission[4] still out of compliance for Code

---

[4] Mueller Flats' management admitted after the suspension that there were

violations, the City suspended Mueller Flats' registration, advising by letter that during suspension "vacant units [at Mueller Flats] may not be leased or otherwise be allowed to be occupied and occupied units may not be leased or otherwise allowed to be occupied by new tenants." ROA.2836-39.[5] The City posted the suspension notice at Mueller Flats on November 22, 2021. ROA.2836-39. Mueller Flats appealed the suspension, but the City restored Mueller Flats' rental registration before the appeal was decided (after less than two months), and FBCC withdrew its appeal. ROA.2886-87; ROA.2850-55; ROA.2857-60; ROA.2851-2852.

It is undisputed Mueller Flats ignored the suspension notice and leased at least seventeen vacant units during the seven-week suspension period. ROA.2862-2878. The same day notice was posted, internal communication showed Mueller Flats management directing staff to "[t]ake down [the suspension notice] and [k]eep leasing." ROA.2880.

## G. FBCC wins its state court lawsuit against the City.

Following a final hearing in September 2022, the district court

---

still open Code violations at the property. ROA.2841-48.

[5] FBCC claims in its brief that the City posted the suspension notice without any prior notice of warning to FBCC. Br. at 11. The record shows the City sent a letter in October 2021 warning of its intent to suspend. ROA.2832-34.

entered a final judgment for FBCC in the First Lawsuit on Oct. 17, 2022—nine months after the City restored Mueller Flats' rental registration that it had suspended. ROA.2990-91 That final judgment vacated the BSC Orders FBCC complained of and disposed "of all parties and claims." ROA.2990-91. Neither party appealed the judgment, which became final on November 17, 2022.

## H.   FBCC files this federal lawsuit against the City.

Less than two months after prevailing in the First Lawsuit, FBCC filed this lawsuit against the City, asserting constitutional challenges to ROP ("Second Lawsuit").[6] Just as it did in the First Lawsuit, in the Second Lawsuit, FBCC complained that the City's post-Uri Code enforcement was unfair and violated due process and that the City's code enforcement ordinances were preempted by state law. ROA.26-44.

## I.   The district court strikes in part one of FBCC's expert's testimony which quantified FBCC's alleged harm from the suspension FBCC did not abide by.

Following extensive discovery, the City sought summary judgment

---

[6] FBCC also filed a third lawsuit against the City of Austin (Austin Energy) before final judgment was entered in the First Lawsuit. ROA.3005-3017. In that third lawsuit, it blamed the City's municipally-owned electric utility for the power outage at its property during Winter Storm Uri and its resulting damages. ROA.3005-3017. That lawsuit remains pending.

on *res judicata* and other grounds on all claims, and FBCC sought partial summary judgment on some of its claims. After the parties filed summary judgment motions, the City filed a motion to strike the testimony of FBCC expert John Thompson for reasons including that his suspension-related damages opinion was unreliable because the undisputed evidence established FBCC ignored the suspension and rented out vacant units despite it. ROA.3944-3954. Thompson was one of three damages experts whose testimony FBCC sought to offer. In addition to Thompson, FBCC also offered the testimony of Cary Krier, along with the testimony of appraiser George Pereira, who opined that FBCC had been damaged by $10.23 million because of ROP. ROA.723-793.[7]

The Court denied the City's motion as to Thompson's broader "reputation damages" model which quantified damages totaling more than $6 million for past and future lost rental income from ROP. ROA.4147. At the hearing, the magistrate judge noted Thompson's opinion on reputation damage had "weakness" and was "subject to criticism" but was supported by "understandable methodology" which the

---

[7] The City unsuccessfully moved to strike Pereira's testimony. ROA.1681-1682.

City's counsel would "exploit down the road" at trial through cross examination. Hr'g Tr. (Nov. 5, 2024) at 43-44. But, it granted the motion as to Thompson's opinion that FBCC was damaged in the amount of $98,022 from lost rents during the suspension period, ruling that Thompson's opinion assumed FBCC abided by the suspension order when it did not. ROA.4145.ROA.4145.

**J.    The district court grants the City's motion for summary judgment on res judicata grounds without reaching any other issues.**

The district court granted the City's summary judgment motion based on *res judicata* without reaching the alternative grounds for summary judgment and without considering any evidence from Thompson. ROA.4148-4162. In its opinion, the district court wrote:

> The Court finds FBCC's present claims all stem from the same subject matter as those litigated before the Travis County district court—City code enforcement actions against Mueller Flats after Uri. Accordingly, there is sufficient identity of the claims arising from the same nucleus of operative facts to satisfy the final requirement for res judicata.

ROA.4158. This appeal followed.

14

**STANDARDS OF REVIEW**

An appellate court reviews the district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Weber v. BNSF Ry. Co.*, 989 F.3d 320, 323 (5th Cir. 2021). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On appeal, the reviewing court may affirm summary judgment on any ground supported by the record, including one not reached by the district court. *Weber*, 989 F.3d at 324. It is not required to do so, however. *Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014).

A decision to admit or exclude expert testimony is reviewed for abuse of discretion. *Harris v. FedEx Corp. Servs., Inc.*, 92 F.4th 286, 303 (5th Cir. 2024); *Knight v. Kirby Inland Marine, Inc.,* 482 F.3d 347, 351 (5th Cir. 2007). "District courts enjoy wide latitude in determining the admissibility of expert testimony, and the discretion of the trial judge and his or her decision will not be disturbed on appeal *unless manifestly erroneous*." *Kim v. Am. Honda Motor Co., Inc.*, 86 F.4th 150, 158–59 (5th Cir. 2023). If the district court abused its discretion, the harmless error doctrine applies, and the ruling will be reversed only if it affected the

substantial rights of the complaining party. *Carlson v. Bioremedi Therapeutic Sys., Inc.*, 822 F.3d 194, 199 (5th Cir. 2016); *Kirby,* 482 F.3d at 351. "'The burden of proving substantial prejudice lies with the party asserting error.'" *Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000) (quoting *McDonald v. Steward,* 132 F.3d 225, 232 (5th Cir.1998)).

**SUMMARY OF THE ARGUMENT**

The district court correctly applied the law—*res judicata* bars this case. FBCC sued the City of Austin's Building and Standards Commission in state court seeking judicial review of municipal orders directing repairs to its apartment complex following Uri. Before that case was even filed, the City required FBCC to register Mueller Flats with its Repeat Offender Program, the City's proactive Code enforcement program aimed at protecting tenant wellbeing. Meanwhile, FBCC strategically waited until after it prevailed in that state court lawsuit before filing this case challenging ROP. As the district court correctly held, the claims in this case are part of the same transaction as the claims made against the City in the first lawsuit. FBCC engaged in claim-splitting and serializing its disputes with the City, wasting judicial resources. Accordingly, the District Court correctly concluded that FBCC's claims against the City are barred.

FBCC also challenges the court's partial exclusion of one of its two damages expert's opinions under *Daubert* (the trial judge denied the motion as to the expert's opinion that FBCC had sustained millions in damages but granted it as to a particular damages component totaling a

relatively small amount of $98,022). And it argues the City was not entitled to summary judgment on the alternative grounds the district court did not reach, though it primarily asks this Court to remand rather than reaching those grounds.

This Court should affirm based on res judicata. If it does not, it should affirm on the City's other summary judgment grounds, though it could also remand for the district court to first consider them. This Court need not reach the merits of the expert ruling FBCC challenges in any event. Even if a district court has abused its discretion—which it has not—it will not reverse unless the error affected the substantial rights of the parties, which is FBCC's burden to show. The expert opinion the district court struck did not relate to the *res judicata* issue, and the opinion should not change the analysis on the alternative bases for summary judgment.

## ARGUMENT

**I.  The district court correctly granted summary judgment on res judicata grounds.**

"[R]es judicata, or claim preclusion, bars causes of action that have already been fully adjudicated or that, with the use of diligence, could have been brought in the prior suit." *Rosetta Res. Operating, LP v.*

*Martin*, 645 S.W.3d 212, 225 (Tex. 2022). Under Texas law,[8] it requires proof of three elements: "'(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.'" *Id.* (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)). "The doctrine seeks to bring an end to litigation, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007). Because *res judicata* is an affirmative defense, *Mowbray v. Cameron Cty.*, 274 F.3d 269, 281 (5th Cir. 2001), the City bore the burden of establishing the elements of the defense, *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The City met its burden.

---

[8] "In determining the preclusive effect of an earlier state court judgment, federal courts apply the preclusion law of the state that rendered the judgment." *Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900, 906 (5th Cir. 2011). Here, the state court judgment in FBCC's first lawsuit was rendered by a Texas state court, so Texas law applies.

**A. First element: it is undisputed that there was a prior final judgment on the merits from the First Lawsuit.**

FBCC never challenged the first element of *res judicata*: a final judgment on the merits in the First Lawsuit. Br. at 20. That judgment, entered on October 17, 2022, became final on November 17, 2022. FBCC then filed its second lawsuit against the City *less than a month later*.

**B. Second element: there is identity of the parties or those in privity with the parties between the Second Lawsuit and the First Lawsuit.**

The City also met the second element of *res judicata*: an identity of the parties or those in privity with them.[9]

**1. The BSC is the City.**

The BSC, like a department of the City, has no separate legal existence from the City. The City's governing body created it under the Local Government Code to facilitate Code enforcement. *See* Tex. Loc. Gov't Code § 54.033(a) (authorizing governing bodies of municipalities to "provide for the appointment of a building and standards commission to hear and determine cases concerning alleged violations of ordinances").

---

[9] FBCC did not apparently contest this element, which seems straightforwardly met here, in the district court. "If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal." *Vaughner v. Pulito,* 804 F.2d 873, 877 n. 2 (5th Cir.1986).

The Local Government Code permits only an "owner, lienholder, or mortgagee of record jointly or severally aggrieved by any decision of a commission panel" to obtain judicial review in district court of a BSC order—not the City or its Code Department. In such a lawsuit, if the BSC order "is affirmed or not substantially reversed but only modified, the district court shall allow *to the municipality* all attorney's fees and other costs and expenses incurred by it[,]"—thereby presupposing that the municipality will defend the BSC's order. Tex. Loc. Gov't Code § 54.039(h) (emphasis added).[10] By contrast, for zoning boards of adjustment, while "[t]he governing body of a municipality may provide for the appointment of a board of adjustment . . . to make special exceptions to the terms of the zoning ordinance[,]" Tex. Loc. Gov't Code § 211.008(a), an "officer, department, board, or bureau *of the municipality*," as well as a "person aggrieved by a decision of the board," may seek judicial review of the board's decision, Tex. Loc. Gov't Code § 211.011 (emphasis added). Unlike the provision providing for judicial review of BSC orders, the provision

---

10 FBCC brought the First Lawsuit under Chapter 54 of the Texas Local Government Code. Chapter 214 of the Texas Local Government Code also provides a right to judicial review of BSC orders and is worded similarly to the right of judicial review under Chapter 54. *See* Tex. Loc. Gov't Code § 214.0012.

providing for judicial review of board of adjustment orders does not allow for attorney's fees for the municipality. Tex. Loc. Gov't Code § 211.011.

It is not clear that the BSC, as opposed to the City itself, was even properly named as a defendant, though the issue was not raised in the state-court proceeding because it made no substantive difference. A Texas home rule city "is allowed to designate whether one of its own subdivisions can be sued as an independent entity." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991). Austin's City Charter grants "the City" the power to sue and be sued, but does not specifically mention the BSC as a possible named defendant. Austin, Tex. City Code art. I, § 3 ("The city may use a corporate seal; may sue and be sued; may contract and be contracted with . . .). Section 54.039 of the Local Government Code talks about the "commission panel" returning a writ of certiorari to provide the record for review, and that costs will not be allowed against it, but does not clearly state that a suit for judicial review of a BSC order must be brought against the BSC itself, as opposed to the City. Tex. Loc. Gov't Code § 54.039. And cases challenging BSC decisions are apparently brought against cities, not against the commissions themselves. *See Turk-Am Phoenix Props., Inc. v. City of Bryan*, No. 10-

24-00168-CV, 2025 WL 1340532 (Tex. App.—Waco May 8, 2025, no pet.) (appeal of BSC order against City of Bryan); *City of El Paso v. Caples Land Co., LLC*, 408 S.W.3d 26 (Tex. App.—El Paso 2013, pet. denied) (appeal of BSC order against the City of El Paso); *Lynwood Park Invs. v. City of Houston,* No. 01-96-00966-CV, 1997 WL 549327 (Tex. App.—Houston [1st Dist] Aug. 29, 1997, pet. denied) (challenge to BSC order against the City of Houston).

Regardless, the way the case was litigated shows the BSC and the City were one and the same and FBCC intended to obtain relief against the City. FBCC brought the First Lawsuit against "the Building and Standards Commission *of the City of Austin, Texas*." ROA.2965. FBCC pleaded that the BSC could be properly served by serving Jannette Goodall at City Hall; Jannette Goodall was the City Clerk. ROA.2965. FBCC also pleaded in the First Lawsuit that the BSC is "an administrative body formed by the City of Austin." ROA.2965. The City's Law Department, the same attorneys in the Second Lawsuit, defended FBCC's First Lawsuit. ROA.2994. As the parties' pleadings and the case history shows, the BSC *is* the City.

23

### 2. If not the City, the BSC is in privity with the City.

Even if the BSC is viewed as a separate and distinct entity from the City, it is nevertheless in privity with the City for *res judicata* purposes.[11] "There is no general definition of privity that can be automatically applied in all *res judicata* cases; the circumstances of each case must be examined. *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex. 1992); *Benson v. Wanda Petroleum Co.,* 468 S.W.2d 361, 363 (Tex.1971). "Those in privity with a party may include persons who exert control over the action, persons whose interests are represented by the party, or successors in interest to the party." *Getty Oil*, 845 S.W.2d at 800–01 (citing *Dairyland County Mutual Ins. Co. of Texas v. Childress,* 650 S.W.2d 770, 773–74 (Tex. 1983)). The purposes of the privity exception to the general rule that people are not bound by a judgment in a suit to which they were not parties "are to ensure that a defendant is not twice vexed for the same acts, and to achieve judicial economy by precluding

---

11 FBCC brought the Second Lawsuit against City officials in their official capacity in addition to the City. FBCC does not argue their inclusion changes the analysis, and it would not. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 373 (Tex. 2009) (official capacity suit against a state actor "is, for all practical purposes, against the state"); *Guardino v. Hart,* No. 22-20278, 2023 WL 3818378, at *3 (5th Cir. June 5, 2023) (parties are in privity if they are in a vicarious relationship).

those who have had a fair trial from relitigating claims." *Benson*, 468 S.W.2d at 363.

*Dairyland* provides a helpful illustration of when the privity element is not met. In *Dairyland*, Harry Childress and his passenger sued Frederick Booth, the insured, over an automobile collision. *Dairyland*, 650 S.W.2d at 772. While that suit was pending, Dairyland County Mutual Insurance Company sued Booth for declaratory judgment that the non-owner's policy did not cover an automobile furnished to the insured for his regular use. *Id.* The court granted Dairyland an agreed declaratory judgment of no coverage. *Id.* The Childress plaintiffs were not parties to Dairyland's declaratory judgment lawsuit. *Id.* After obtaining a judgment against Booth, the Childress plaintiffs sued Dairyland, and Dairyland argued that suit was barred by *res judicata* because the Childress plaintiffs were bound by the declaratory judgment action, since their suit was derivative of Booth's coverage and they were therefore in privity with Booth. *Id.* at 773. The Supreme Court of Texas disagreed: the Childress plaintiffs "could exercise no control over the declaratory judgment suit. Their interests were not represented by a party to the action nor were they successors in interest to a party. In fact

25

the purpose of the suit was to work against their interest." *Id.* at 774. Given that lack of representation or control, there was no privity between the Childress plaintiffs and Booth in the declaratory judgment action.

Here, by contrast, if not one and the same, the BSC and the City are in privity in the First Lawsuit. The City controlled the defendant's interest in that action: the City, through the City Law Department, defended the BSC's orders. ROA.2994. The City's interests were also represented in the action—the City's Code Department sought the BSC violation orders FBCC challenged, orders the City wanted enforced and upheld. *Amstadt*, 919 S.W.2d at 653 (privity exists if the parties share an identity of interests in the basic legal right that is the subject of litigation). The BSC represents the City's interests—indeed, it effectively *is* the City—because it is an arm of the City. The City defended FBCC's First Lawsuit and ensured its interests were represented.[12]

## C. Third element: the claims in the Second Lawsuit either were or could have been raised in the First Lawsuit.

---

[12] FBCC argues that the City's role in the First Lawsuit was more akin to a real party in interest in a mandamus proceeding. Br. at 23. But unlike in a mandamus proceeding where the City could challenge a judge's ruling, the City cannot challenge a BSC ruling, and only the aggrieved property owner may sue for judicial review of a BSC order. The City and the BSC are even more aligned than a litigant and a judge whose order it defends.

Under Texas law, *res judicata* applies not only to claims that were *actually* litigated in a prior lawsuit, but also to causes of action which arise out of the same subject matter and which *might* have been litigated in the first suit. *See Barr v. Resol. Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 630 (Tex. 1992). Under this "transactional approach," to determine what constitutes the subject matter of a suit, a court analyzes "the factual matters that make up the gist of the complaint, without regard to the form of action"; "[a]ny cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit. *Id.* A transaction "is not equivalent to a sequence of events; the determination is to be made pragmatically, 'giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage.'" *Id.* at 631 (citing Restatement (Second) of Judgments § 24(1) (1982)). "The policies behind the doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery." *Barr,* 837 S.W.2d at 629.

27

The claims in FBCC's Second Lawsuit arise out of the same facts as the First Lawsuit, as demonstrated by the significant overlap in the allegations between the First Lawsuit and the Second Lawsuit:

| First Lawsuit | Second Lawsuit |
|---|---|
| City gave inconsistent guidance on need for permits; "[t]he City did not provide consistent or intelligible guidance regarding these permitting requirements." ROA.2969. | City gave inconsistent guidance on need for permits; "[t]he City did not provide consistent or intelligible guidance regarding these permitting requirements." ROA.144. |
| City's permitting backlog prevented FBCC from remedying Code violations; "it was impossible for Mueller Flats to comply with the notices of violation because the City of Austin was not able to process the large volume of permit applications submitted in the wake of Winter Storm Uri and due to the length of time it takes to replace and repair large-scale boilers." ROA.2968. | City's permitting backlog prevented FBCC from remedying Code violations; "it was impossible for Mueller Flats to comply with the notices of violation because the City of Austin was not able to process the large volume of permit applications submitted in the wake of Winter Storm Uri and due to the length of time it takes to replace and repair large-scale boilers." ROA.143. |

| First Lawsuit | Second Lawsuit |
|---|---|
| FBCC could not clear violations because tenants would not let City inspectors in to inspect; "when inspectors returned to determine whether the violations had been remedied, tenants were either not at home or did not allow the inspectors into the apartment. In those circumstances, the inspectors refused to enter the apartment or conduct a reinspection to verify that the repairs occurred." ROA.2972 | FBCC could not clear violations because tenants would not let City inspectors in to inspect; "when inspectors returned to Mueller Flats to determine whether violations had been remedied, tenants were either not at home or did not allow the inspector into the apartment. In those circumstances, the inspectors refused to enter the apartment or conduct a reinspection to verify that the repairs occurred, such that the violations in question could not be 'closed out' and continued to appear 'ongoing' in the Code Department's records." ROA.147 |
| FBCC was forced to evict tenants to comply with City demands; "[b]ecause of the conditions caused by the winter storm and the City's actions, Mueller Flats was forced to serve some residents with notices to vacate their apartments so that repairs demanded by the City could be completed." ROA.2970-2971. | FBCC was forced to evict tenants to comply with City demands; "[b]ecause of the conditions caused by the winter storm and the City's actions, Mueller Flats was forced to serve some residents with notices to vacate their apartments so that repairs demanded by the City could be completed." ROA.146. |

| First Lawsuit | Second Lawsuit |
|---|---|
| City purposefully targeted FBCC and ratcheted up punishment against it; "City officials representatives at Mueller Flats warned that the City was targeting Mueller Flats because City Council Member Greg Casar had decided to make an example out of the apartment complex during recent media appearances. For example, during one media appearance, Casar stated that he intended to 'accelerate enforcement and come down with everything the city has" on Mueller Flats." ROA.2967. | City purposefully targeted FBCC and ratcheted up punishment against it; "[t]he City further ratcheted the punishments on Mueller Flats by adding the complex to the 'Repeat Offender Program.'" ROA.147. |
| City's enforcement actions violated due process under the United States and Texas Constitutions. ROA.2985. | City's enforcement actions violated due process under the United States and Texas Constitutions. ROA.151-152. |

| First Lawsuit | Second Lawsuit |
|---|---|
| City forced FBCC to make repairs although under Property Code it did not have to until it received insurance proceeds; "[t]hough Texas law does not require landlords to begin repairs until they receive insurance proceeds to pay for those repairs, Mueller Flats sought to apply for permits from the City of Austin to expedite repairs to its apartments." ROA.2967-2968. | City forced FBCC to make repairs although under Property Code it did not have to until it received insurance proceeds;; "Mueller Flats did this without receiving a single dollar from insurance, while those claims were pending. Notably, a landlord in Texas is not required to begin repairing damage resulting from an insured casualty loss 'until the landlord receives the insurance proceeds.' TEX. PROP. CODE § 92.054(a)." ROA.143. |
| City's enforcement efforts were preempted by the Property Code. ROA.2993-2994. | City's enforcement efforts were preempted by the Property Code.ROA.152-153. |

Plainly stated, the "factual matters that make up the gist of the complaint" are the same: the City's Code enforcement actions against Mueller Flats following Winter Storm Uri. S*ee Barr*, 837 S.W.2d at 630. The facts are "related in time, space, origin, or motivation." The focus of both suits is the City's actions following Winter Storm Uri in February 2021. The focus of both actions is a single location: Mueller Flats. And the alleged unlawful motive behind the City's enforcement action is the same in both suits: to ratchet up pressure on Mueller Flats, purportedly

at the behest of then City Councilmember Greg Casar, to "make an example of the apartment complex" and "accelerate enforcement and come down with everything the city has." ROA.2967; Br. at 8–11. Both lawsuits arise out of the same transaction or series of transactions: the City's enforcement efforts against Mueller Flats, both through the BSC and through the Repeat Offender Program, in the wake of Uri. The claims should have all been brought together in one proceeding. *See Barr*, 837 S.W.2d at 631 (no valid reason to subject defendant to two different lawsuits when they were related in time and space and motivation).

FBCC argues that the issues would not have formed a convenient trial unit because the relief afforded under Chapter 54 of the Texas Local Government Code was limited to an order affirming, reversing, or modifying the specific BSC orders at issue, and "[t]hat Code does not allow a contestant like FBCC to bring in other, unrelated orders that the BSC never adjudicated[.]" Br. at 24. FBCC takes too narrow a view of what claims can be properly joined. The Supreme Court of Texas has held that a takings claim (one of FBCC's claims in the Second Lawsuit) <u>must</u> be asserted in the same proceeding as a suit for judicial review of a BSC order of demolition of nuisance property to prevent waiver of such claim.

*City of Dallas v. Stewart*, 361 S.W.3d 562, 580 (Tex. 2012). In other words, not only are constitutional claims properly joined in a suit for judicial review of a BSC order, but sometimes they *must* be joined so they will not be lost.[13] It does not matter if the scope of review (such as substantial evidence) differs from the scope of review on the joined claims. *See id.*; *see also Cox v. Nueces Cnty.*, 839 F.3d 418, 420–21 (5th Cir. 2016) (plaintiff should have brought federal constitutional claim in state court substantial-evidence review of civil service commission findings to avoid *res judicata*).

FBCC's First Lawsuit could have asserted the federal and state causes of action made in its Second Lawsuit. That is not to say that the lawsuit would not have been removed under federal question jurisdiction, or that those causes of action would have all ultimately been tried together (as opposed to, say, summary judgment being granted on the claim for judicial review of the BSC orders), but there was nothing precluding FBCC from having brought all its claims in one state-court

---

[13] *See City of Dallas v. Stewart*, 361 S.W.3d 562, 565 (Tex. 2012) (joining due process and takings claims in suit for judicial review of BSC order). This holding likewise suggests that a city is the proper party defendant in a case challenging an order of its building and standards commission.

proceeding, and FBCC could not quietly reserve federal claims to litigate later in federal court. *Cox*, 839 F.3d at 422 ("Plaintiffs claim they 'abstained' from litigating their already-existing federal claims in state court, warranting reversal. That notion is specious. A threshold requirement of any sort of abstention is that the plaintiffs inform the court of any request to abstain.").

FBCC also argues that the two suits do not arise out of the same subject matter because Mueller Flats was not placed on ROP because of any Uri-related Code violations, and the violations that gave rise to Mueller Flats's ROP designation occurred between 2019 and 2021, pre-Uri. Br. at 25. True, but in FBCC's telling theory, Mueller Flats's ROP placement was part of a coordinated campaign on the part of the City, purportedly orchestrated by Councilmember Casar, to "come down with everything the city has." ROA.2967; Br. at 8–11. Moreover, FBCC was placed on ROP in *March 2021*, before it even filed the First Lawsuit. ROA.2768. FBCC appealed the ROP designation, which the City denied in May 2021. ROA.2821. FBCC filed the First Lawsuit a month later in June 2021. ROA.2965. And the City suspended and restored its rental registration under ROP well before the court entered final judgment in

the First Lawsuit. ROA.2836-2839; ROA.2857-2860; ROA.2990-2991. The timeline shows that these are claims that could have all been raised in the First Lawsuit:



Thus, FBCC was already aggrieved and able to raise claims relating specifically to ROP in the First Lawsuit. Doing so would have furthered the policy purpose of *res judicata*: finality, stability, and judicial economy. *See Daccach*, 217 S.W.3d at 449.

## II. The City was entitled to summary judgment on alternative grounds.

"An appellate court may affirm summary judgment 'on any ground supported by the record, even if it is different from that relied on by the district court.'" *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.,* 754 F.3d 272, 276 (5th Cir. 2014) (quoting *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001)). If the Court finds the City should not have been granted summary judgment based on *res*

*judicata*, it may affirm the district court's judgment on other grounds.

### A. The City was entitled to summary judgment on FBCC's procedural due process claim.

FBCC received all process it was due, and this Court recently upheld the denial of a preliminary injunction to enjoin a similar code enforcement program to ROP in response to a due process challenge. *SO Apartments, L.L.C. v. City of San Antonio*, 109 F.4th 343, 350–52 (5th Cir. 2024); *see also Mathews v. Eldridge*, 424 U.S. 319, 321 (1976) (process due is flexible and dictated by considerations of the private interest affected, the risk of erroneous deprivation of that interest, and the government interest), In *SO Apartments*, an apartment complex challenged the constitutionality of San Antonio's Proactive Apartment Inspection Program, which required owners of qualifying apartment complexes to pay a yearly fee and permitted monthly inspections, on procedural due process and other grounds. *Id.* at 347. The district court denied a preliminary injunction, and this Court affirmed. *Id.* The Court noted that, like in this case, the property owner could appeal both being required to be part of the Proactive Apartment Inspection Program and the underlying violation that resulted in a "point" under the program. *Id.*

at 351–52. This Court held the scheme comported with due process because the risk of erroneous deprivation of property was low and "the City's and public's interests are weighty." *Id.* at 352. This Court added on the government interest that "the City is responding to documented issues of improper housing conditions and is trying to improve the safe living conditions for those residents that ordinarily could not advocate for themselves." *Id.*

FBCC argues that Mueller Flats was placed on ROP with zero notice or opportunity for a hearing. Br. at 31. FBCC's argument is belied by the record. FBCC was provided notice that Mueller Flats was being required to register with ROP and given the opportunity to appeal that determination and a hearing, and it was only after the hearing that the appeal was denied and ROP requirements attached. ROA.2768-2770; ROA.2892-2893; ROA.2804; ROA.2772-2773; Austin, Tex. City Code § 4-14-5(D).

FBCC claims the process was defective because a member of the three-member panel making a recommendation on the appeal was also involved in the underlying decision to place Mueller Flats on ROP and given negative information about FBCC. Br. at 31. But "mere familiarity

with the facts of a case gained by an agency . . . does not . . . disqualify a decisionmaker." *Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ. Ass'n*, 426 U.S. 482, 493 (1976) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). The honesty and integrity of those serving as adjudicators is presumed, and a court will not infer bias when no evidence is presented to indicate the hearing officer's mind was irrevocably closed. *Baran v. Port of Beaumont Nav. Dist.*, 57 F.3d 436, 446 (5th Cir. 1995). This argument is unavailing.

FBCC also complains that the ROP program affected its reputation, but its liberty interest in its reputation is only deprived by a false communication. *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991). It does not contend the label of "repeat offender" is false, and the evidence showed that it had been the subject of prior code complaints. ROA.3058-3061.

FBCC finally suggests the process was insufficient because it could effectively never come off ROP. Br. at 32. The record shows, however, that similarly large complexes were able to meet the requirement to come

off the program. ROA.2887.[14]

## B. The City was entitled to summary judgment on FBCC's substantive due process claim.

The City's ROP program is rationally related to a legitimate governmental interest and does not shock the conscience.

FBCC complains that violations warranting inclusion on ROP are not confined to health and safety violations and therefore the program lacks a rational basis. Br. at 34. But as the legislative history for ROP indicates, any violation that is not timely corrected has an impact on a tenant's quality of life, and failure to correct violations typically indicates an indifference that over time will have a cumulative effect on a tenant's quality of life. ROA.2710-2711. This meets the test for rationality, which does not even require that the interest asserted be the actual or proven interest but instead just a connection between the policy and some conceivable interest. *Reyes v. N. Texas Tollway Auth. (NTTA)*, 861 F.3d 558, 563 (5th Cir. 2017). FBCC likewise challenges the signage requirement and notice of rental registration filed in the real property

---

[14] Mueller Flats is no longer on ROP. *See* https://www.tccsearch.org/RealEstate/SearchImage.aspx; Fed. R. Evid. 201.

records, but those aspects of the program have a conceivable rational basis in assisting tenants with reporting Code violations and notifying potential property purchasers both of the program requirements and a mechanism for the property to come off the program through a change in ownership. Austin, Tex. City Code § 4-14-7; ROA.2885.

Nor does ROP shock the conscience. ROP registration simply does not qualify as the type of government action that is so offensive that it rises to the level of an outrageous abuse of power. *Compare S.O. Apartments*, 109 F.4th at 352 (subjecting apartments to $100-per-unit fee for inclusion in rental registration program "is not so egregious that it would interfere with rights 'implicit in the concept of ordered liberty'" (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)) *with Tyson v. Sabine*, 42 F. 4th 508, 519 (5th Cir. 2022) (holding homeowner's sexual assault by sheriff during home welfare check "was an outrageous abuse of power that shocks the conscience").

### C. The City was entitled to summary judgment on FBCC's takings claim.

The City's ROP program is not a regulatory taking because it does not go "too far." Here FBCC focuses mainly on its appraiser's opinion of how FBCC has been damaged from being on ROP as though to show that

its impact is all out of proportion to its benefit. Br. at 36. But even if that evidence is credited (which it should not be; there is no competent evidence that Mueller Flats's presence on ROP prevented FBCC from selling it at the top of the real estate market, which is the assumption FBCC's appraiser's opinion is predicated on), it merely shows, at most, a 15 percent diminishment of the alleged market value of Mueller Flats based on ROP. ROA.3623-3628. That amount does not rise to the level of a taking. *Lingle v. Chevron U.S.A.*, 544 U.S. 528, 544 (2005) (Chevron "has not clearly argued—let alone established—that it has been singled out to bear any particularly severe regulatory burden" where challenged rent cap would reduce Chevron's aggregate income on 11 of its 64 lessee-dealer stations by about $207,000 a year but it "nevertheless expects to receive a return on its investment in these stations that satisfies any constitutional standard").

The economic impact of the regulation is also but a factor that can be considered, and the character of the government action and its interference with distinct investment-backed expectations may also be considered. *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978) (stating nonexclusive list of factors to consider in whether a

government regulation goes "too far"). ROP, and the City's ability to suspend a rental registration under ROP, existed <u>before</u> FBCC purchased Mueller Flats and did not interfere with FBCC's investment expectations. ROA.2694-2705; ROA.2909. As for the character of the government action, the program is designed to protect tenant health and safety, and its requirements are not onerous. Even the suspension provision is simply a tool of last resort, and suspension is lifted as soon as the property achieves compliance. It is a temporary measure designed to protect tenants and is not a taking.[15]

### D. The City was entitled to summary judgment on FBCC's First Amendment claim.

Signage requirements for regulated entities are legion and do not trigger constitutional alarms:

> [P]rofessionals in many states have to publicly display their licenses to practice. Doctors have a duty in every jurisdiction to secure informed consent before they perform some procedures on their patients, which requires them to disclose the facts about the attendant health risks and the availability of alternative treatments. Employers are required to comply with a host of federal

---

[15] *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036 (5th Cir. 1998) is not to the contrary, and an imposition of a utility hold is a far more draconian method of requiring compliance with City code requirements than, say, suspending an apartment's ability to rent vacant units.

> regulations directing them to post information in their workplaces about labor rights and safety. Securities laws and regulations include numerous corporate disclosure provisions. Restaurants typically have to display their latest public health inspection "grades." Producers of prepared foods and pharmaceuticals must provide information about the contents of the products they sell.

Alan K. Chen, *Compelled Speech and the Regulatory State*, 97 Ind. L.J. 881, 883 (2022). In *Nat'l Inst. of Fam. & Life Advocs. (NIFLA) v. Becerra*, 585 U.S. 755, 775 (2018), the U.S. Supreme Court specifically carved out such typical regulatory disclosures as generally allowable, stating: "[W]e do not question the legality of health and safety warnings long considered permissible, or purely factual and uncontroversial disclosures about commercial products." ROP's signage requirements fall under this category of constitutionally permissible compelled speech.

FBCC's claim is governed by *Zauderer v. Off. of Disciplinary Couns.*, 471 U.S. 626 (1985). "*Zauderer* applies where the compelled speech is (1) purely factual and (2) uncontroversial." *R J Reynolds Tobacco Co. v. Food & Drug Admin.*, 96 F.4th 863, 877 (5th Cir. 2024). "To survive *Zauderer* scrutiny," the compelled speech "must (3) be justified by a legitimate state interest and (4) not unduly burdensome."

*Id.* The ROP signage requirement met all four elements. While FBCC does not like the "repeat offender" designation, that does not mean it is not purely factual and uncontroversial, and FBCC qualified for ROP because of repeated notices of violation of code. ROA.2884; ROA.2738-2766; ROA.3059-3061. "A fact does not become 'value-laden' merely because the fact drives a reaction." *Id.* at 880. "[T]hat the speaker does not like the message does not make it controversial; there must be something more." *Id.* at 881.

FBCC is not being required to recite the Pledge of Allegiance, contrary to its religious views, as in *W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943), or forced to act as a billboard for a state slogan and thereby "be an instrument for fostering public adherence to an ideological point of view [it] finds unacceptable," as in *Wooley v. Maynard*, 430 U.S. 705, 715 (1977). Instead, it is simply required to post (1) its ROP registration; and (2) signs stating its 24/7 emergency maintenance number and how to make a code complaint. Austin, Tex. City Code §§ 4-14-33, 4-14-34. It does not violate FBCC's First Amendment rights to be required to post signs on such matters. *See Hignell-Stark v. City of New Orleans*, 154 F.4th 345, 358 (5th Cir. 2025)

(New Orleans short-term rental regulation requiring advertising disclosures as to the owner and operator permit numbers, Americans with Disabilities Act compliance and wheelchair accessibility, the number of available guest bedrooms, and the maximum available occupancy did not violate First Amendment); *Illinois Fuel & Retail Ass'n. v. Illinois Dep't of Revenue*, 608 F. Supp. 3d 699, 705–06 (C.D. Ill. 2022) (Illinois temporary signage requirement that that gas retailers post signs on pumps constitutional under *Zauderer*); *see also New York State Rest. Ass'n v. New York City Bd. of Health*, 556 F.3d 114, 136 (2d Cir. 2009) (requirement that restaurants post calorie content information on their menus and menu boards constitutional).

## E. The City was entitled to summary judgment on FBCC's preemption claim.

FBCC's claim that ROP is preempted by Chapter 92 of the Texas Property Code fails because there is no legislatively expressed intent to preempt. "In the case of a home-rule city, the Legislature must demonstrate its intent to preempt with 'unmistakable clarity.'" *City of Houston v. Houston Pro. Fire Fighters' Ass'n*, 664 S.W.3d 790, 804 (Tex. 2023) (quoting *BCCA Appeal Grp. v. City of Houston*, 496 S.W.3d 1, 7

(Tex. 2016)). "If the statute makes that legislative intent clear, then a local ordinance 'is unenforceable to the extent it conflicts with the state statute.'" *Id.* (quoting *Dall. Merch.'s & Concessionare's Ass'n v. City of Dallas*, 852 S.W.2d 489, 491 (Tex. 1993)).

Chapter 92's application is limited to the relationship between landlords and tenants, not owners of substandard buildings and the localities in which those substandard buildings are located. Tex. Prop. Code § 92.002 ("This chapter applies only to the relationship between *landlords* and *tenants* of residential rental property.") (emphasis added). Nowhere in Chapter 92 does it state that it intends to preempt a municipality's efforts to enforce property maintenance standards against property owners. ROP does not intrude on the relationship between landlord and tenant; it only regulates the relationship between property owner and city. If Chapter 92 were intended to preempt that sort of regulation, that intent is far from "unmistakably clear."

III. **FBCC's challenge to the exclusion of expert testimony should be rejected.**
A. **FBCC has not shown its substantial rights were affected by the district court's alleged error in partially excluding the testimony of one of its damages experts.**

Erroneous expert testimony rulings are subject to a harmless error

analysis. *See Dresser-Rand Co. v. Virtual Automation Inc.,* 361 F.3d 831, 841–42 (5th Cir. 2004). Any errors, including those involving expert testimony, that do not affect the substantial rights of the complaining party should be disregarded, and the burden of proving harm is on the appellant. *See id.*; *see also Harris*, 92 F.4th at 304 (holding appellant failed to show expert testimony that should not have been admitted affected its substantial rights); 28 U.S.C. § 2111.

FBCC did not argue that its substantial rights were prejudiced by the expert ruling it challenges—nor would they be, because the district court based its summary judgment ruling on *res judicata* grounds. The district court's alleged error regarding the admissibility of expert testimony had no impact at all on the judgment. Even if the court reaches the alternative grounds for summary judgment, it would be hard-pressed to find the inclusion or exclusion of Thompson's struck testimony would make any difference. This point of error should be denied for that reason alone. *See Wood v. Bexar Cnty.*, 147 F.4th 534, 544 (5th Cir. 2025) (harmless error applies to summary judgment rulings; error harmless if it does not tip the balance of the outcome at summary judgment).

**B. There is no abuse of discretion in striking expert testimony contradicted by the facts.**

Even if FBCC can show the alleged error was not harmless or should otherwise be reviewed, it nevertheless cannot show an abuse of discretion justifying overturning the district court's ruling. Under Federal Rule of Evidence 702, district courts are gatekeepers to determine the relevance and reliability of expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). The *Daubert* reliability analysis "applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight*, 482 F.3d at 355 (internal quotation marks omitted). District judges control their courtrooms and have "broad discretion to determine whether a body of evidence relied upon by an expert is sufficient to support that expert's opinion." *Id.* at 354. Expert testimony which relies on facts not supported by the record or assumptions belied by the facts is properly excluded. *Guillory v. Domtar Indus. Inc.*, 95 F.3d 1320, 1331 (5th Cir. 1996); *Paz v. Brush Engineered Materials, Inc.,* 555 F.3d 383, 389 (5th Cir. 2009).

It is undisputed FBCC ignored the City's suspension of its rental

registration precluding it from renting vacant units at Mueller Flats during the suspension period. ROA.2836-2839; ROA.2862-2878; ROA.2880. But FBCC's damages expert opined Mueller Flats lost rental income of nearly $100,000 because of the suspension. ROA.3974-3977; ROA.4013. Although hard to follow, FBCC apparently argues that because its expert's methodology was sound, the court erred in striking his related damages opinion—even though the undisputed facts contradicted it. Br. at 28–29. FBCC seems to argue that when expert opinions are contradicted by undisputed facts, then the jury must nevertheless consider those baseless opinions, and any cross-examination provided, and the trial judge errs by striking that opinion. *Id.* FBCC is incorrect.

Thompson testified at deposition that when modeling damages caused by the suspension, he checked Mueller Flats November and December rent rolls and did not count in his damages model any units that were occupied, and earning rent, according to the rolls. ROA.4080. FBCC argues this showed Thompson did not include units that were

49

rented during the suspension in his damages model. Br. at 28.[16] But the entire premise of Thompson's opinion was that suspension order damaged FBCC because it prevented Mueller Flats from renting vacant units for seven weeks; it is an opinion of lost rents. ROA.3976-3977. The suspension order could not have damaged FBCC if they simply ignored it, which is in fact what happened. ROA.2836-2839; ROA.2862-2878; ROA.2880. These facts, which FBCC labored to conceal throughout discovery, directly contradicted Thompson's related damages model. Because this part of his expert testimony was totally untethered to the actual facts, it was *inadmissible*, not simply subject to cross-examination based on the facts. *Guillory*, 95 F.3d at 1331; *Paz,* 555 F.3d at 389

*Puga v. RCZ Solutions., Inc.*, 922 F.3d 285 (5th Cir. 2019), which FBCC cites, is not to the contrary. In *Puga*, the appellant challenged the admission of a state trooper's testimony as an accident reconstruction expert, arguing that his testimony was "irrelevant because he testified that he (1) could not find any defects on the road, (2) could not find any

---

[16] FBCC's pleading falsely suggests Mueller Flats *was unable* lease any vacant units during the suspension. ROA.150. In the closing days of discovery, FBCC admitted it ignored the City's suspension order and continued renting units. ROA.4107-4110. It took a court order for FBCC to reveal that fact. ROA.1939–1941.

skid marks on the road, (3) did not determine how fast Brown was driving, and (4) did not know the weight of the trailer or its contents." *Id.* at 293. The Court held such defects were cross-examination fodder and did not render his opinions inadmissible: his opinion "was based on a multitude of facts"; while it "did not take into account every possible explanation for the accident, and some measurements were missing . . . he was the closest to the scene when the accident happened, observed the conditions on the road, knew Brown was talking on the phone, and looked at various tire markings on the median and on the pavement," and if he "missed any important facts, the oversight should go to the weight of his opinion, not its admissibility." *Id.* at 295–96.

Even if Thompson's damage model did not assume that FBCC abided by the suspension order, as FBCC claims, the undisputed fact that FBCC ignored the order rendered his damages model irrelevant and unreliable. He did not just get some fact wrong; the entire factual premise of his testimony was wrong. FBCC argues that Thompson's struck opinion was not "so fundamentally unsupported that it could not possibly help the factfinder." Br. at 29. But the district court possesses great leeway in making such determinations, and it determined otherwise. The

51

question is not whether enough of Thompson's damage model was supported for his opinion not to be struck, but whether the district court abused its discretion in holding otherwise. No abuse of discretion is shown, and certainly no manifest error.

## CONCLUSION

For the foregoing reasons, the City respectfully requests that this Court affirm the district court's judgment.

RESPECTFULLY SUBMITTED,

Deborah Thomas, City Attorney
Vasu Behara, Litigation Division Chief

/s/     *Hannah M. Vahl*
Hannah M. Vahl, Assistant City Attorney
State Bar No. 24082377
hannah.vahl@austintexas.gov
Telephone:  (512) 974-2346
Paul Matula, Assistant City Attorney
State Bar No. 13234354
paul.matula@austintexas.gov
Telephone:  (512) 974-2171
AUSTIN CITY ATTORNEY'S OFFICE
P. O. Box 1088
Austin, Texas 78767-1088

**COUNSEL FOR APPELLEES**

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,367 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Century Schoolbook 14-point font, a proportionally spaced typeface.

/s/ *Hannah M. Vahl*
Hannah M. Vahl

# CERTIFICATE OF SERVICE

I hereby certify that a copy of this document has been served on

November 3, 2025, as follows:

**<u>Via CM/ECF to:</u>**

Kevin J. Terrazas
State Bar No. 24060708
kterrazas@terrazaspllc.com
Eric A. Hudson
State Bar No. 24059977
ehudson@terrazaspllc.com
Jennifer A. Foster
State Bar No. 24104938
jfoster@terrazaspllc.com
TERRAZAS PLLC
1001 S. Capital of Texas Hwy.
Building L, Suite 250
Austin, Texas 78746
(512) 680 3257

**ATTORNEYS FOR APPELLANTS**

/s/ *Hannah M. Vahl*
Hannah M. Vahl